## Hartman *versus* Diller & Groff.

1. As a general principle, declarations of a grantor after the grant cannot be used to impeach it.

2. Where the bona fides of a transfer is attacked by creditors, and some evidence has been given tending to show a common design to defraud, &c., declarations of the grantor after the transfer are evidence.

3. Wherever there is evidence tending to show a combination to do an unlawful act, it lets in the declarations of all the parties against each other.

4. A vendor's continuance in possession of personal property is a badge of fraud, even if it be not a fraud *per se.*

5. A bill of sale without consideration at its execution paid or agreed to be paid or precedent indebtedness, would not be validated by the subsequent payment by the vendee of a claim of a third person against the property.

6. A bill of sale was not under seal, and no money or other consideration

[Hartman *v.* Diller.]

at the time of its execution was shown. The burden was on the vendee, as against creditors, to show a valuable consideration to the amount named in the bill at the time it was made or before. His failure to do so would be a circumstance from which a jury might infer fraud.

May 4th 1869. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas of *Lancaster county :* No. 20, of May Term 1869.

This was an issue under the Sheriff's Interpleader Act, entered November 19th 1866, in which Lewis Hartman was plaintiff and claimant, and G. J. Diller and H. D. Groff were defendants.

On the 20th of July 1866, the defendants, Groff and Diller, issued a fi. fa. against Jacob Bartel, under which the sheriff levied on certain goods as the property of Bartel, of which Hartman claimed to be owner. To test the ownership of the goods the issue was directed.

On the trial before Hayes, J., the claimant gave in evidence the following bill of sale :—

·' Jacob Bartel, of Lancaster city, hereby sells to Lewis Hartman all the said Bartel's stock of horses, wagons, buggy and sulky, harness, stoves, bells, oats, corn, hay, grain-drills and winnow mills, and all the stock, lumber, iron-castings, materials, machinery, boiler, engine, gearings, belting and fixtures in and about said Bartel's manufactory, on the alley running from Chestnut to Orange, between Water and Mulberry streets, in said city, agreeably to the list or schedule hereto annexed, and any and all other articles not included in said schedule, in any way belonging to said factory, for the sum of two thousand and two hundred dollars, cash to be paid at the execution hereof, and which the said Bartel acknowledges to have received. Hartman to have possession of the said goods and articles immediately. Hartman to have the use of the said shop until 1st of April next, without paying rent— any drills or winnow mills away from said shop to belong to Hartman.

" Witness my hand this first day of February 1866.

"JACOB BARTEL.

" Witness: W. CARPENTER."

Carpenter, the witness to the bill of sale, testified that the sale was settled either by money or evidences of indebtedness. The plaintiff, by a number of witnesses, gave evidence that after the sale he entered into possession of the manufactory, took control of the business, hired and paid the hands, and did other acts tending to show ownership in him. F. Chalfant, at the date of the bill of sale, was a partner of Bartel; he claimed to own part of the property mentioned in the bill of sale, and demanded that Hartman should pay him before delivery. Chalfant took possession of

[Hartman v. Diller.]

some of the property; and after much altercation and a criminal prosecution against him, Hartman paid him $475, the amount he had put into the firm, and secured him against all debts due by the firm. The prosecution was settled; and on the day the bill of sale was executed, Chalfant released to Hartman all his claim for the property and for damages on account of the prosecution. There was evidence of payment by Hartman of several hundred dollars of the debts of the concern.

On the part of the defendant there was evidence that Bartel worked in the manufactory very much as he had previously done; that he collected money, directed and paid the hands. His own name was not in the time-book as one of the hands; he had access to the books: that the property sold was of greater value than the price paid; that Bartel owed plaintiff nothing, and had notes of Bartel, which he held as collateral security. There was other evidence for the purpose of showing a concurrent possession in Hartman and Bartel, and that the bill of sale was without consideration. After having given evidence as above stated, the defendant offered " to prove the declarations of Jacob Bartel about the time of this transfer and after, and to the time of his death, and before the transfer was made." The plaintiff objected to the offer; it was admitted by the court, and a bill of exceptions sealed. The declarations of Bartel, as given in evidence, tended to show want of consideration, &c. The charge of the court states the points of the parties respectively, and is inserted as being necessary for a proper understanding of the opinion of the Supreme Court.

After stating the facts as to the sales, execution, &c., Judge Hayes said :—

" These defendants, Diller & Groff, defend their proceedings by taking the ground that the alleged sale and transfer of Jacob Bartel to Lewis Hartman were fraudulent and being a fraud was void—and therefore made no change in the property, which remained as before the property of Jacob Bartel, and liable to the defendants' execution.

" This is a sound and a good defence if made out and proved to the satisfaction of the jury. The evidence adduced has for the most part relation to the question of fraud in regard to the arrangement between Jacob Bartel and Lewis Hartman in the transfer of the factory and property belonging to the same. And the points presented by the counsel on both sides all relate to this' question. These points are as follows :—

" On the part of the plaintiff, Lewis Hartman, the court is requested to charge the jury :—

" 1. Although fraud may be proved by a chain of circumstances given in evidence, yet if these circumstances, however numerous, fail directly and clearly to show one or more clear acts of fraud,

[Hartman *v.* Diller.]

the jury cannot find the transaction fraudulent, because fraud can never be presumed, but must be directly proved. If in this case no act of fraud is directly proved, then the verdict must be for the plaintiff.

" In answer to this the court will say, that fraud is not to be presumed, the burden of proof is on the party alleging it, but when necessary or proper in any case to be established it must be proved. How it is to be proved is not precisely fixed; but like other facts, it must be proved either directly by positive evidence of the facts, or by proof of circumstances which tend to no other conclusion, and from which a jury must infer the fraud alleged. If the jury, in view of the transactions between Jacob Bartel and Lewis Hartman, as exhibited in all the evidence before them, are satisfied that there was no act of fraud in the transaction, nothing done to delay or hinder the creditors of Jacob Bartel, and that the sale and transfer of the factory and property pertaining to it, were all conducted in good faith, they should find a verdict for the plaintiff.

" The plaintiff's second and third propositions are:—

" 2. If the jury, from all the evidence in the case, believe that the sale of the property in the shop sold to Hartman by Bartel, on the first day of February 1866, and afterwards levied on, was an actual sale, and the possession of the goods was delivered to Hartman at the time of the sale, or in a reasonable time afterwards, then the verdict must be for the plaintiff.

" 3. If the sale was an actual sale accompanied by a transfer of possession to Hartman at the time, or in a reasonable time afterwards, then whether Bartel was clear of debt, or deeply in debt, makes no difference, as the verdict must be for the plaintiff.

" The answer to the second point is that the jury, if they believe the sale of the property to Hartman by Bartel, the 1st of February, 1866, was a bonâ fide—i. e. a fair, honest and open sale, without any design to delay, hinder or defeat the creditors of Jacob Bartel, and the possession followed immediately upon the sale, the verdict ought to be for the plaintiff, and that too whether Bartel was not indebted or deeply in debt as the third proposition puts the question.

" 4. If the sale was a bonâ fide sale, accompanied by possession, in a reasonable time after the contract, and the possession of Hartman was open and notorious, that if the price paid for the goods was their full value, or under their full value, makes no difference, and the verdict in the absence of clearly proved fraud, must be for the plaintiff.

" The answer is, that if the sale was a bonâ fide sale, &c., and the price paid was such as was fairly and honestly agreed upon between the parties, and whether it was more or less than the value of the property would make no difference, and the verdict,

[Hartman v. Diller.]

on proof to the satisfaction of the jury that the sale was of that character, ought to be for the plaintiff.

" On behalf of defendants the first point is :—

" 1. The agreement under which Hartman claims to hold the property, not being under seal, and the fairness and honesty of the transaction being disputed, he must prove to the satisfaction of the jury that he paid the consideration set forth in the agreement at the time of the delivery thereof, and if he has failed to do so, the transaction is fraudulent.

" The answer is, that on the exhibition of the agreement mentioned, and it being shown that no money or consideration was paid or given at the time of its execution, it was requisite and necessary for the plaintiff to satisfy the jury that there was a valuable consideration for the purchase of the property agreed to be sold to him, to the amount set forth in the agreement, either at the time it was made or before, and his failure to do so would be a circumstance from which the jury might infer that the transaction was fraudulent.

" 2. If the jury believe that Hartman took a transfer of the property of Bartel for the consideration of $2200, when he knew that Bartel was insolvent, the property being worth more than double that amount, that fact is evidence of fraud.

" This is answered in the affirmative.

" 3. If the jury believe that there was no material change in the shop, except that Hartman was there most of the time bossing, and that he paid the hands—and that Bartel helped to hire hands, gave directions to hands, took a general interest in the shop as he did before Hartman came there, and received no wages from Hartman as a hand, these facts are evidence of fraud and collusion.

Answer : " These circumstances were admitted in evidence as relevant to the question of fraud, and are such as it is very proper for the jury to consider.  If these facts, with all the other testimony, convince the jury that the plaintiff conspired with Jacob Bartel to delay, hinder and defeat the creditors of the latter, and the sale and transfer were contrived by them to carry out their design, it would be such a fraud as would invalidate the whole transaction, and leave the property just as if no such sale or transfer was made and liable to the defendant's execution.

" 4. If the jury believe from all the testimony in the case, that Hartman and Bartel made the arrangement in question for the purpose of hindering and delaying creditors so as to prevent them obtaining their just claims, or for the purpose of securing Hartman for money advanced by him to Bartel, or that Hartman and Bartel were in partnership, their verdict must be for the defendants.

Answer : " If the jury believe from all the testimony in the case, that Hartman and Bartel made the arrangement for the purpose of hindering and delaying creditors, so as to prevent them

[Hartman *v.* Diller.]

obtaining their just claims, or that Hartman and Bartel were in partnership, the verdict should be for the defendants; though if the sale and transfer were bonâ fide, for the purpose of securing Hartman for money which had been actually advanced by him to Bartel and no other purpose, there would in such case be no fraud; but if there had been an actual sale and transfer with the intent to delay, hinder and defeat Jacob Bartel's creditors, the transaction would be fraudulent and of no effect."

The verdict was for the defendants. The plaintiff took a writ of error and assigned for error the admission in evidence of Bartel's declarations, and the answer to the defendants' 1st, 3d and 4th points.

*A. H. Hood*, for the plaintiff in error.—There was not sufficient proof of combination between Bartel and Hartman: Bredin *v.* Bredin, 3 Barr 88; Gaunce *v.* Backhouse, 1 Wright 350; 1 Greenl. Evid. §§ 111, 112, 177; Porter *v.* Wilson, 1 Harris 641. Bartel's declarations were not part of *res gestœ*: Patton *v.* Minesinger, 1 Casey 393; Woodwell *v.* Brown, 8 Wright 121; Rees *v.* Livingston, 5 Id. 113; Featherman *v.* Miller, 9 Id. 96; Hannis *v.* Hazlett, 4 P. F. Smith 133; Hanover Railroad *v.* Coyle, 5 Id. 396; Sheaffer *v.* Eakman, 6 Id. 144. Declarations of a vendor cannot be given in evidence to defeat a sale: Babb *v.* Clemson, 12 S. & R. 329; Scott *v.* Heilager, 2 Harris 238; Kusenburg *v.* Brown, 6 Wright 173. As to 2d assignment of error: The time of payment cannot affect the validity of the sale: Bowen *v.* Burk, 1 Harris 146; McVicker *v.* May, 3 Barr 224. As to 4th assignment: Uhler *v.* Maulfair, 11 Harris 481.

*D. G. Eshelman* (with whom were *A. J. Steinman* and *Abram Shank*), for defendants in error.—As to admitting the declarations of Bartel: Reitenbach *v.* Reitenbach, 1 Rawle 362; Wilbur *v.* Strickland, Id. 458; McKee *v.* Gilchrist, 3 Watts 230; Haldeman *v.* Martin, 10 Barr 371; Kelsey *v.* Murphy, 2 Casey 78; Scott *v.* Baker, 1 Wright 330; 1 Greenleaf on Evid. § 11. The burden was on Hartman to prove payment of the consideration: Rogers *v.* Hall, 4 Watts 362. Great inadequacy of price is evidence of fraud: Hamet *v.* Dundass, 4 Barr 178. The control retained by Bartel is evidence of fraud: Milne *v.* Henry, 4 Wright 352. Slight evidence of concert is sufficient: McDowell *v.* Rissell, 1 Wright 168; Garrigues *v.* Harris, 5 Harris 344. In investigating fraud, great latitude of evidence is allowed; Zerbe *v.* Miller, 4 Harris 495. The question of fraud is for the jury: Huntzinger *v.* Harper, 8 Wright 204; Kaine *v.* Weigley, 10 Harris 184. As to the burden of proof of the consideration: Wilson *v.* Howser, 2 Jones 116; Rogers *v.* Hall, 4 Watts 359; Zerbe *v.* Miller, *supra*; Kaine *v.* Weigley, *supra*. The sale of personal property

[Hartman v. Diller.]

to prevent a creditor from obtaining execution is void: Streeper v. Eckart, 2 Whart. 302; Abbey v. Dewey, 1 Casey 413.

The opinion of the court was delivered, July 6th 1869, by

SHARSWOOD, J.—The 1st assignment of error is that the court below erred in permitting the declarations of Bartel made after the sale to Hartman and not in Hartman's presence to be given in evidence. As a general principle it is undoubtedly well established that the declarations of a grantor made after the execution of the grant cannot be made use of for the purpose of impeaching it. But the rule has been so far modified that when the bona fides of the transfer is attacked by creditors alleging that it was intended to hinder, delay and defraud them, and therefore void under the statute of 13 Eliz. c. 5, and some evidence has been adduced tending to show a common purpose or design of this character by the parties, then such declarations are admissible. For wherever evidence is given tending to prove a combination or conspiracy to do an unlawful act, it lets in the declarations of all the parties against each other. In Reitenbach v. Reitenbach, 1 Rawle 362, where the question was as to the validity of a bond, and a conversation with the obligor in the presence of the obligee had been proved going to show a fraud upon creditors, other declarations subsequently made by the obligor in the absence of the obligee were held to have been improperly excluded.

In Wilbur v. Strickland, 1 Rawle 458, and McDowell v. Rissell, 1 Wright 164, a principal fact relied on as laying sufficient ground for admitting such evidence seems to have been that the vendor occupied and used the property after the transfer as he had done before; for such continuance in possession is beyond all question a badge of fraud, even if under the circumstances it be not a fraud per se, which most generally it is. In the case last cited it was said by Woodward, J.: "To make such declarations competent, there must be some evidence of a common purpose or design; but a very slight degree of concert or collusion is sufficient." That there was such evidence in this case is very apparent. Bartel, the vendor, after the alleged sale to Hartman, continued in the establishment working just as he had done before—his name was not entered on the time book as one of the workmen employed—he had access at all times to the books, and he used his influence and persuasion with the hands to induce them to agree to a reduction of wages. Hartman was shown on one occasion to have referred a person to Bartel to procure money for the purchase of material, and Bartel furnished the money. These were circumstances quite as strong as those adjudged to be sufficient in the cases, which have been cited. What weight was to be attached to the declarations when admitted was of course for the jury. If on the whole evidence they believed the transaction to have been honest and

bonâ fide on the part of Hartman, they would not of course give any weight to declarations by Bartel, the effect of which would be to apply property, which he had bought and paid for, to satisfy the debt of a dishonest vendor.

The remaining assignments of error are to the charge of the court in answer to the points presented by the counsel of the defendants. Those presented by the plaintiff were all affirmed. An attentive examination of the answers excepted to has not satisfied us that there is any error of which the plaintiff has any right to complain. They submitted to the jury the evidence as to the want of consideration for the transfer, the retention of possession by the vendor concurrently with the vendee, and the other facts from which they were to decide whether the transfer was made to hinder, delay and defraud the creditors of Bartel. If the bill of sale was wholly without any consideration at the time it was made, no money then paid or agreed to be paid, and no precedent indebtedness, a subsequent payment by the vendee of a demand against the property by a third person claiming to be a partner of the vendor would not validate the transaction. The court below stated the law accurately when they instructed the jury in answer to the defendants' 2d point that "on the exhibition of the agreement, and it being shown that no money or consideration was paid or given at the time of its execution, it was necessary for the plaintiff to satisfy the jury that there was a valuable consideration for the purchase of the property agreed to be sold to him, to the amount set forth in the agreement, either at the time it was made or before, and his failure to do so would be a circumstance from which the jury might infer that the transaction was fraudulent." The exception to the answer to the 3d point of the defendants is a mere verbal hypercriticism. In referring to the matters stated as facts, it is plain that the court did not mean to usurp the province of the jury in deciding upon the sufficiency of the evidence which had been adduced to prove them. It was in affirmance of the point, that if the jury believed from the testimony that these were facts, they were evidence of fraud and collusion. In like manner we must construe the answer to the 4th point by reference to the point itself. It negatived so much of that point as asked for an instruction that if the arrangement was for the purpose of securing Hartman for money advanced by him to Bartel, the verdict must be for the defendants, by saying that "if the sale were bonâ fide for the purpose of securing Hartman for money which had been actually advanced by Bartel, and no other purpose, there would in such a case be no fraud." The court certainly could not have been understood as instructing the jury that this was the only consideration which would render the sale valid. We must look at the whole charge and answers together. We are not called upon to say whether they were in all respects a true statement of the law.

[Hartman *v.* Diller.]

It is enough that they did the plaintiff in error no injury. He cannot complain if the whole question of the bona fides of the transaction was fairly submitted to the determination of the jury upon the evidence which had been given in the cause.

Judgment affirmed.