## Wickham, Appellant, *v.* Berwick Store Company.

*Sheriff's interpleader—Interpleader—Sale—Evidence—Fraud—Question for jury.*

1. On the trial of a sheriff's interpleader to determine the ownership of a team of horses sold to the defendant as the property of the defendant in the execution, and claimed by plaintiff, the father-in-law of the defendant in the execution, under a private sale to himself by his son-in-law, the case is for the jury where the evidence is conflicting as to the good faith of the private sale, and as to the sufficiency of the change of possession of the team after the private sale. In such a case the court cannot give binding instructions for the plaintiff where the evidence offered by the plaintiff, if believed by the jury, justified a finding that the transaction between the plaintiff and his son-in-law was without fraud, and that the change of possession was all that could reasonably be expected under the circumstances.

2. On the trial of an interpleader where the property in question was sold as the goods of the defendant in the execution, and the plaintiff claims the goods as a purchaser from the defendant in the execution prior to the sheriff's sale, declarations of the defendant in the execution are admissible, but only for the purpose of determining the question whether or not the sale was fraudulent. If under all the evidence the sale, when made, was in fact honest, subsequent declarations of the vendor as to ownership are inadmissible to affect the title.

3. In such a case it is reversible error for the court to refuse a point as follows: "If the jury believe that the sale was bona fide, any subsequent conversations of the defendant in the execution would not affect its validity."

Argued March 6, 1911.    Appeal, No. 18, March T.,

1911, by plaintiff, from judgment of C. P. Luzerne Co., June T., 1908, No. 198, on verdict for defendant in case of C. L. Wickham v. Berwick Store Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Sheriff's interpleader to determine title to a team of horses. Before LYNCH, P. J.

The court charged as follows:

S. W. Cole lived at Bloomsburg and was the owner of two horses and other property. He contends that on December 24, 1907, he honestly, for a valuable consideration, sold this property to his father-in-law, Mr. Wickham; and that in pursuance of this sale, Mr. Wickham directed Cole to take the property to Mr. Wickham's house in Fairmount township in Luzerne county, a distance of thirty miles, and that on about the twenty-sixth, Mr. Cole did take this property to Mr. Wickham's barn in Fairmount township. The contention of the defendant is that the whole thing was done for the purpose of defrauding Cole's creditors.

The Berwick Store Company on June 18, 1907, being the holder of a note for $260, had judgment entered thereon in this county against S. W. Cole. On April 1, 1908, the company issued an execution thereon and placed it in the hands of the sheriff of this county, who went to the barn of Mr. Steele in Shickshinny and by virtue of this execution levied on the horses in the barn and in the custody, at least, of Cole. Mr. Wickham then notified the sheriff that he and not Cole was the owner of this property; the sheriff being in doubt came into court and had this question submitted to court and jury. You are now to decide whether at the time of the levy by the sheriff, Wickham or Cole was the owner of the property.

[Wickham contends that an agreement dated on the twenty-fourth between Wickham of the first part and Cole of the second part, was made, a part of it being as follows: "The party of the second part, Cole, agrees to take the

team and work it for the period of one year, stand half of the expenses and receive half of all he makes. The party of the first part to find half and receive half." Signed by Wickham and by Cole.—Cole was then the owner and had a right to take the team.] [4] Then there is a receipt: "Received in full of C. L. Wickham, three hundred dollars, for one brown horse and one sorrel horse and a wagon, harness and chains." Signed by S. W. Cole.

[Your first inquiry is, do you believe from the whole testimony this was an honest sale? That Cole honestly and for a valuable consideration sold this property to his father-in-law, Wickham? Or do you believe it was a contrivance in the form of an agreement, to get rid of the property by Cole, and keep it out of the hands of his creditors?] [5] If you find from the evidence this was a fraudulent sale, stop there and return a verdict for the defendant. [In case you find it was a bona fide sale, a sale made in good faith, the next question is: Did the seller, Cole, deliver possession and control—exclusive possession and control—of the property to Wickham? Although a sale may be honest and a valuable consideration pass, so far as an execution creditor is concerned there must be a delivery of the possession of the property to the buyer. On this I read what Judge FULLER charged the jury when the case was tried before him: "When a purchase is made in good faith and for a valuable consideration, followed by an act intended to transfer the possession as well as the title—both possession and title—and the vendee assumes such control of the property as reasonably to indicate change of ownership, the delivery of possession as a matter of law cannot be declared insufficient. In order to be good against existing creditors of a vendor the sale of personal property must be not only honest in fact, but accompanied by a complete change of possession, a transfer of possession from vendor to vendee, or accompanied by such change of possession as under all the circumstances, the character of the property, the use to which it is to be put and the situation generally, would be reasonable.

After the alleged purchase by Wickham, Wickham testified, he told Cole to take this property to Wickham's house in Fairmount, and two days after, he did take it to Mr. Wickham's place and stayed there for five days in charge of the property. Mr. Wickham in the meantime had not returned. If I make any slight mistake in the testimony, of course, you are not bound by it. You are to remember for yourselves. Cole then took the property or part of it, at least, to Shickshinny; at least he went away to work this team, as he claimed, under this agreement that he was to work it for a year. Did Wickham take possession and control of this property or did it remain, under this agreement and the facts of the case, in possession of Cole? If you believe Wickham took possession of and exercised control over the property and it was an honest sale, he will be entitled to your verdict.] [6] If you believe it was a dishonest sale or attempt to sell, or that the possession was not changed, under the rule which I have read—or that the control of the property remained in Cole—the defendant is entitled to your verdict. What was said by Wickham and by Cole as to the possession of the property? Cole had it at Shickshinny. He had been driving the team and, so far as people there could see, exercising acts of ownership over this property. You remember the testimony as to what Cole said after this alleged sale to Wickham. Where two are associated for the accomplishment of the same illegal purpose, the acts and admissions of one made during the pendency of the unlawful enterprise and in furtherance of its objects, are receivable in evidence. The defendant claims that from the inception of this thing it was fraudulent, and the claim set up by Wickham, while the property was in the custody of Cole was fraudulent, hence this evidence was taken to show what Cole said after the alleged sale. What it is claimed he said, the substance, the gist of the whole thing—you recall the details—is, that this property is mine and I want to sell it to you. Several witnesses were called to that. Mr. Wickham testified, This property

belongs to me. I do not recall any evidence to the contrary. So far as Mr. Wickham is concerned, wherever he spoke of this property when there was occasion to speak of it, he said, This is my property. In addition, many witnesses have been called to impeach the credibility for truth and veracity of Wickham and Cole. It is not the duty of the court to pass upon the credibility of witnesses nor to say who told the truth. It is for you to say whether these men have been successfully impeached.

If the property belonged to Cole at the time the writ came into the sheriff's hands, April 1, 1908, defendant would be entitled to a verdict. If you believe the property belonged to Wickham at that time, plaintiff is entitled to a verdict.

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (1) refusal of plaintiff's point quoted in the opinion of the Superior Court and (4–6) above instructions quoting them.

*Thomas Darling*, for appellant, cited: Keystone Watch Case Co. v. Bank, 194 Pa. 535; White v. Gunn, 205 Pa. 229; Reyer v. Rice, 36 Pa. Superior Ct. 178; McKibbin v. Martin, 64 Pa. 353; Forsyth v. Matthews, 14 Pa. 100; Hill v. Leibig Mfg. Co., 3 Pa. Superior Ct. 398.

*W. Alfred Valentine*, for appellee, cited: Boyer v. Weimer, 204 Pa. 295; Weller v. Meeder, 2 Pa. Superior Ct. 488; Hastings v. Sproul, 10 Pa. Superior Ct. 82.

OPINION BY HEAD, J., July 13, 1911:

This was a feigned issue to try the title to a team of horses levied on and sold as the property of one Cole. Wickham, the plaintiff, who was the father-in-law of Cole, claimed that the horses belonged to him, and this proceeding under the sheriff's interpleader act followed. It resulted in a verdict and judgment for the defendant,

the purchaser of the property at the sheriff's sale, and the plaintiff appeals. The learned trial court declined to instruct the jury, as matter of law, that there had been no such change of possession of the property in question as would validate the sale against an execution creditor of the vendor, but submitted that question under all of the evidence to the jury. If, as the learned counsel for the appellee argues, such binding instructions should have been given, the plaintiff could not have been injured by any of the rulings of the court complained of, and any discussion of the several assignments of error would be useless.

No good purpose would be served by an attempt at this late date to review and analyze what Mr. Justice SHARSWOOD aptly termed the "beadroll" of decisions since the case of Clow v. Woods, 5 S. & R. 275. Those which may be fairly said to have been more particularly aimed at the enforcement of the primary rule laid down in the leading case cited have been collated and discussed in the majority opinion of this court delivered by our late Brother WILLARD in Weller v. Meeder, 2 Pa. Superior Ct. 488; whilst, per contra, those which are directed rather to the recognition of the exceptions to that primary rule are cited and considered in the minority opinion of ORLADY, J., in the same case. Of course, if a binding direction in favor of the defendant would have been proper, it must have been because, after giving to the plaintiff the benefit of every fact which the testimony tended to establish and every favorable inference from such fact, there would still have remained no question to be submitted to the jury.

We may then, for our present purpose, regard as established the following facts: Cole, the former owner of the team, resided in the town of Bloomsburg and kept his horses there. He was indebted to his father-in-law, the plaintiff, who resided in the adjoining county of Luzerne at a point some thirty miles distant from Bloomsburg. On December 24, 1907, the plaintiff paid a visit to Bloomsburg and had a settlement with his son-

in-law. It was there agreed that the latter should sell his team of horses to the former for the sum of $300, which was a fair price. The consideration was paid by the cancellation of the indebtedness already referred to, then fixed at $220, and the payment of $80.00 in cash. A bill of sale for the horses, wagon, etc., and a receipt for the purchase money were duly executed. It was part of the agreement that Cole should work the team under the direction of the plaintiff; that each should pay one-half the expense of its maintenance, and each take one-half the profits, if any, from the operation. Acting under the orders of the plaintiff, Cole took the team on the second day following to the home of the plaintiff in Luzerne county. He remained there with it for several days awaiting the return of the plaintiff who had fallen sick at the home of his daughter. He was directed by letter to take the team and go to work hauling lumber for a man named Handbar, at which he continued for some time. On several occasions the team was brought back to the residence of the plaintiff and kept in his stable. It was still later taken to Shickshinny, where it was being worked in the manner described, when it was levied upon by the sheriff as the property of Cole. Although Cole continued to reside in Bloomsburg until April, 1908, the team was never kept there after it was removed to plaintiff's residence on December 26. The transaction, as between the plaintiff and Cole, was honest in itself and founded upon a valuable consideration. The plaintiff was somewhat advanced in years, in delicate health, and could not use his property to advantage except by some such arrangement as the one entered into with Cole.

Although the testimony was seriously conflicting as to the character of the entire transaction, yet, had the jury been willing to accept the testimony of the plaintiff in its integrity, they would have been warranted in finding the facts above stated in his favor. Under such a state of facts, we do not think the learned trial court could have properly declared, as matter of law, that the sale was

constructively fraudulent as against the execution creditor of Cole. On the contrary, we think the case was thus brought within the class of which McGuire v. James, 143 Pa. 521; Garretson v. Hackenberg, 144 Pa. 107, and Bell v. McCloskey, 155 Pa. 319, are illustrations. The doctrine of these cases, which it seems to us must be here applied, is well stated in the following excerpt from the opinion of Mr. Justice STERRETT in McGuire v. James: "The alleged insufficiency of plaintiff's possession, or whether there was in fact such change of ownership and possession as, under the circumstances, could reasonably be expected, taking into view the character and situation of the property and the relations of the parties, was a question of fact for the jury, and not one of law exclusively for the court." We must conclude, therefore, that the learned trial court could not have properly directed a verdict for the defendant.

Upon the trial considerable testimony was offered by the defendant to prove that after the alleged sale of the horses, Cole, who still had them in his visible possession, declared to various persons that he was the owner of the team and desired to sell it. These declarations, although made in the absence of the plaintiff, and without his knowledge, were admissible in a case like the present under the doctrine declared in Hartman v. Diller, 62 Pa. 37; Souder v. Schechterly, 91 Pa. 83, and Boyer v. Weimer, 204 Pa. 295. The general rule and the nature of the exception to it are thus stated by Mr. Justice FELL in the case last cited: "The general rule that the declarations of a grantor made after the execution of a grant cannot be used to impeach it, has been so far modified that when the good faith of a transfer has been attacked by creditors and some evidence has been advanced to show a common purpose or design by the parties to hinder, delay or defraud creditors, subsequent declarations by the grantor are admissible." It is clear, however, that the probative value of such declarations must be confined to the determination of the question whether or not the sale was fraud-

ulent in fact or honest and bona fide.   If it be determined under all the evidence that the sale when made was in fact honest and valid, it is manifest that subsequent declarations of the vendor could not be considered as either admissible or sufficient to disturb the title which the vendee had honestly acquired.

The first point for charge presented by the plaintiff was as follows: "If the jury believe that the sale was bona fide, any subsequent conversation of Cole would not affect its validity."   This point was refused.   In thus ruling, we are constrained to hold that the learned trial court fell into error because if the jury found, as the point assumes, that the sale when consummated was bona fide, then the general rule already indicated would apply and there would be no room for the operation of the exception to it because such exception can be operative only on the theory that the sale was fraudulent in fact.

An examination of the remaining assignments of error discloses no ground for a reversal of the judgment and they may be dismissed without further consideration. The first assignment of error is sustained.

Judgment reversed and a venire facias de novo awarded.