## M'Kee *against* Gilchrist.

A deed of conveyance made with a design to delay, hinder or defraud creditors being absolutely void, is wholly inoperative, and will not even give a preponderance to the rights of a party where equities are equal. Nor will it afford any security whatever to the grantee for a debt which was actually due to him by the grantor.

When evidence has been given tending to establish a combination to defraud creditors, the declarations of either party to it, although not made in the presence of the other, may afterwards be given in evidence.

A judgment creditor who treats a fraudulent conveyance by a father to a son as fair, by issuing a domestic attachment and attaching the bonds which were given for the consideration of the conveyance, is not prejudiced thereby so far as to prevent him from claiming the amount of his judgment out of the proceeds of the sale of the land by the sheriff, which sale was made upon the basis of the conveyance being void.

In an issue between two creditors to try their respective rights to money made by the sheriff out of a sale of land as the property of one who, it was alleged, had fraudulently conveyed it to his father, the father being a co-defendant in the judgment upon which the money was claimed, and released from liability upon it, is a competent witness.

ERROR to the common pleas of *Westmoreland* county.

This was an issue directed by the court to try the right to money made by the sheriff out of the sale of the real estate of Joseph Ford; in which John M'Kee was plaintiff, and Robert Gilchrist defendant.

Joseph Ford having been the owner of the land, on the 18th of February 1820 conveyed it to his father Alexander Ford. On the 9th of March 1820 the judgment of the plaintiff, John M'Kee, against Joseph Ford, was obtained. On the 10th of May 1820, the judgment of the defendant, Robert Gilchrist, was obtained against both Joseph and Alexander Ford. After John M'Kee the plaintiff obtained his judgment, he issued a domestic attachment against Joseph Ford to secure the consideration money due by the father to the son for the land; nothing was obtained from this. The land was sold upon the execution of the defendant, which had been levied upon the land as the property of both Joseph and Alexander Ford. On the trial, the plaintiff alleged, and gave evidence to prove, that the deed of the 18th of February 1820, from the son to the father, was made to defraud creditors and was therefore void; and further to establish this fact, he offered in evidence the declarations of the son, made not in the presence of the father, which were received by the court, but about which the jury were afterwards instructed that it should not have been received, and should have no influence upon their determination. Upon the trial, also, Alexander Ford was offered as a witness by the defendant, who previously released him from

[M'Kee v. Gilchrist.]

liability on the judgment against him and his son : the plaintiff objected, but the objection was overruled. It was proved that at the time of the conveyance there was a debt due by the son to the father of about 350 dollars. The plaintiff contended that the conveyance was absolutely void, and that his judgment being first in point of time, he was entitled to the money. The defendant relied upon the positions, that the plaintiff having issued a domestic attachment against the son, upon which the consideration money of the conveyance to the father was attached, he had thereby sanctioned the validity of the transaction, and he could not now gainsay it : that, inasmuch as a conveyance had been made by the son to the father before the plaintiff obtained his judgment, and the judgment of the defendant was against both the son and the father, the equities being equal, the lien of the defendant upon the legal title entitled him to the money : that, inasmuch as the son was really indebted to the father in the sum of 350 dollars at the time of the conveyance, he thereby became secured to that extent, of which neither he nor his creditors could be deprived. The court below were of opinion, that the positions taken by the defendant were right, and so instructed the jury, who found a verdict accordingly.

*H. B. Foster* and *A. W. Foster,* for plaintiff in error.
*J. B. Alexander,* for defendant in error.

The opinion of the Court was delivered by
Kennedy, J.—Six of the errors assigned are to the charge of the court delivered to the jury, and the seventh and last to their opinion on the competency of Alexander Ford as a witness for the defendant.

The first error is, that the court, in effect, instructed the jury that the plaintiff and defendant in this issue being both creditors of Joseph Ford, the conveyance by him of his land to his father, although collusive and made with a design to hinder, delay and defraud the creditors of Joseph Ford, yet the defendant ought to be preferred, inasmuch as the legal title to the land, at the time it was taken in execution and sold by the sheriff, was vested in Alexander Ford the father, by the deed of conveyance from the son, against both of whom the defendant in this issue had his judgment and execution, under which the sale was made. And the equities of the plaintiff and defendant being equal, as the court said, the latter was to be preferred, because he alone of the two had it in his power to take the legal estate in the land in execution under his judgment, the plaintiff's judgment being only against Joseph the son, who had, as the court seemed to think, divested himself of the legal title to the land by his deed of conveyance to his father. In this I apprehend there was error ; because, if the deed of conveyance from Joseph to his father was made covenously with intent to hinder, delay and defraud the creditors of Joseph, it was *absolutely void* under the statute of 13 *Eliz. c.* 5, and vested no interest or estate whatever, either legal or

equitable in the father as against the creditors of Joseph ; and the plaintiff in this issue being one of them, and on the very eve too of obtaining a judgment for the amount of his debt, the deed was void and of no effect against him in respect to his claim.   The " deed," says chancellor Kent in Roberts *v.* Anderson, 3 *Johns. Ch.* 378, "from the debtor to a *fraudulent* grantee is utterly void as to creditors ; and as against them the grantee can make no conveyance, *for he has no title as against them.*"   The deed then being a perfect *nullity* as against the creditors of Joseph, the legal title as well as the equitable, to the land, still remained in him for the purpose of satisfying his creditors, the same as if he had not made the deed : hence his creditors in obtaining judgments against him afterwards, acquired liens upon the land, according to the dates of their respective judgments, in the same manner precisely as if no such deed of conveyance had been made ; and the judgments so obtained must therefore be paid out of the moneys arising from the sheriff's sale of the land according to their seniority.   The plaintiff then, in this case, having obtained his judgment *before* the defendant got his, had the first lien on the land, and is therefore entitled to be paid the amount of his judgment first, out of the moneys arising from the sheriff's sale.

The second exception is, that the court erred in directing the jury, " that in forming their judgment in regard to the question of fraud, they ought to throw out of view any declarations made by the son not in the presence of the father."   Without having the evidence before us which was given on the trial of the cause, we cannot undertake to decide the question raised by this exception.   It may be observed, however, that if testimony were given on the trial tending to show that the father and son had combined together, in making the deed of conveyance, for the purpose of defrauding the creditors of the son, it appears to me that declarations of the son disclosing the fraudulent design more fully and distinctly, though not made in the presence of the father, would not only be admissible as evidence, but entitled to consideration by the jury in deciding on the question of fraud.   It is by such evidence that conspiracies are frequently detected and established.   Commonwealth *v.* Eberle, 3 *Serg. & Rawle* 9.

The third error cannot be passed on, unless the testimony given on the trial of the cause were before us.

The fourth error is an exception to what the court said in their charge to the jury, on the effect of the plaintiff's suing out a writ of domestic attachment against Joseph Ford, and attaching, among other things, the moneys owing by the father to the son on the purchase of the land, in order to secure the amount of his judgment against the son.   The court told the jury that the plaintiff in doing so conveyed the idea to all the world, that he regarded the sale of the land from the son to the father as a fair and valid sale.   That the sale by the sheriff on Gilchrist's judgment having been made in August 1823, and no application made by the plaintiff in this case

[M'Kee v. Gilchrist.]

to have his judgment paid out of the money arising from the sale till the January following, whatever fraud there might have been in the deed from Joseph Ford to his father, that under these circumstances it ought not to prejudice the right of the defendant. If the court below by this intended to convey to the jury the idea that the defendant ought to be paid the amount of his judgment, out of the money arising from the sale of the land made by the sheriff, in preference to the plaintiff, notwithstanding the deed from the son to the father was made collusively and with the intent to defraud the creditors of the son, they were in error; and that such was the opinion entertained by the court, and intended to be communicated by them to the jury, is pretty manifest from the whole of the charge taken together. The suing out of the writ of attachment ought to have no weight or bearing against the plaintiff that I can perceive, because he might have believed the transaction between the father and son fair and honest; but if it were in fact otherwise, his suing out the writ of attachment cannot be considered any confirmation whatever of it on his part; nor yet prevent him from pursuing any other course to obtain his debt, that he might have adopted, had he never resorted to the attachment. As soon as he discovered that the deed of conveyance from the son to the father was fraudulent and *utterly void* against him, and that his judgment was therefore a lien, and the first lien too upon the land, he was still at liberty to have sued out an execution upon his judgment, to have seised and sold the land under it; or to have his judgment first paid out of the moneys arising from a sale under an execution sued out, as in this case, by the defendant upon his judgment. In short, there is no reason for saying that the lien of his judgment upon the land became extinct by suing out the writ of domestic attachment; nor that he has had his judgment in any way satisfied by means of it; and why then should his claim be affected by it? It is only he who takes part in the fraud that the law will permit to be affected by it.

The fifth exception is, that the court erred in charging the jury that the father, by taking the deed of the son, had become secured to the extent of a debt of 325 dollars, for which the father was bound as his surety; and that he had a right, in equity at least, to retain the deed until he should either be paid, or indemnified by the son or by a disposal of the land. Considering the deed of conveyance from the son to the father as having been made to defraud the creditors of the son, and both as having participated in the fraud, this part of the charge cannot be sustained. It would have a tendency in practice to encourage and promote fraud, instead of restraining and preventing it. Beside, it is in direct violation of the statute of 13 *Eliz. c.* 5, which makes every such deed *utterly void* against creditors. Where the grantee or obligee participates in the fraud, or knowingly assents to it, he shall not be permitted to avail himself of the deed, even for the purpose of securing the payment of a just debt that may be owing to him, as against the creditors of the grantor or obligor. Whiting

III.—EE

[M'Kee v. Gilchrist.]

*v.* Johnson, 11 *Serg. & Rawle* 328. So a fraudulent grantee is liable to forfeit, as against the claims of creditors the whole consideration paid by him, though it may be fully equal to the value of the property. Cadogan *v.* Kennett, *Cowp.* 434. This doctrine is supported by every principle of morality and justice as well as that of sound policy. It is not to be tolerated that one man shall join with a second to aid him in cheating a third with impunity. The law abhors every attempt of the kind ; and as to equity, upon which the court below placed the father's claim to indemnity, there is no rule perhaps better established than that the person who claims it must come into court for that purpose with clean hands.

The sixth error is an exception to the conclusion of the charge of the court to the jury ; in which they add, "the equity therefore being equal as between the present parties, we are of opinion that the defendant is entitled to your verdict, upon the evidence which is now submitted to your consideration." It has been shown already, that if the deed of conveyance from the son to the father was concocted between them for the purpose of defrauding the creditors of the son, the right of the plaintiff in this case to be paid the amount of his judgment first, out of the money arising from the sheriff's sale of the land, exists both at law and in equity. It is therefore unnecessary to repeat what has been said on the first error assigned in regard to this right of the plaintiff.

The seventh error is an exception to the opinion of the court in admitting the father to be a witness for the defendant in this case, after being released by him from the judgment which he had against the father and son, and which he claimed to have paid out of the moneys arising from the sale of the land. Whether this release, given to the father, did not likewise release all claim of the defendant to the money arising from the sale of the land as the *property of the father,* and prevent him from claiming it otherwise than as money arising from the sale of the land as the *property of the son,* is a question which has not been raised, and therefore need not be passed on. It is possible, however, that the true object and occasion of giving the release would be sufficient to qualify and limit the operation of it, so that it should not be extended any further than was necessary to remove all *interest* which the father might have in the result of the issue then trying in this case. Considering the father then as having given up all claim to the money at stake in the issue joined in this case, and as having been released from all liability to the defendant beyond it, I cannot perceive that he had any interest in the result, that he could either be a gainer or loser by it ; and I am therefore inclined to believe that he was competent. It must be admitted, however, that, as his honesty was in some degree impeached by the transaction, he must have felt strongly disposed to place his own conduct in the most favourable point of view that he could imagine ; but this was a matter which went to his credit ; and was certainly entitled to great consideration from the jury, and suf-

[M'Kee v. Gilchrist.]

ficient to put them on their guard against giving implicit faith and credit to any thing that he might say relative to the transaction, going to show that it was fair.

Judgment reversed, and a *venire de novo* awarded.