## Pier *versus* Duff.

1. The declarations of a grantor after the grant cannot be received to affect the title of his grantee.

2. If the grantee permits the grantor to remain in actual possession, the grantor's declarations whilst in possession may be given in evidence: this is not extended to a constructive possession.

3. What a man in possession of land or goods says, is admissible to prove in what capacity he is there.

4. The declaration of a tenant in common cannot be given in evidence to impeach the title of his fellow.

5. The admission during his tenancy, by one under whom a plaintiff claims, affects such plaintiff only.

6. Tenants in common have no community of title and interest which will make their declarations admissible against each other.

7. One authorized to sell, but not in actual possession, is a mere broker, and not even constructively in possession: his declarations are not admissible to affect his principal.

8. If there be even very slight evidence of complicity between a grantor and grantee to defraud creditors, the declarations of one, although after the grant, are admissible against the other.

9. A price agreed on, or payment of anything, is not absolutely necessary to pass property, provided there is an adequate valuable consideration.

10. A valid transfer may be made on credit or as a mortgage to secure an honest debt.

11. Lyon and Mong owned lumber in partnership. Lyon sold his interest to Duff, and the lumber was marked "Duff & Mong." Lyon, as the agent of Mong, continued to take charge of his interest in the lumber. It was no error to leave to the jury the question of Duff's exclusive possession.

12. Duff could not have excluded Mong or his agent from the concurrent possession of the lumber.

13. After the sale, Duff moved the lumber, marked as his and Mong's, to his own mill. He thus gave all the notice of his title to an individual half that could be reasonably required.

November 1st 1869.    Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Allegheny county* : No. 49, to October and November Term 1868.

This was a feigned issue, under the Sheriff's Interpleader Act, in which Samuel Duff was claimant and plaintiff and R. W. Pier defendant. The issue was formed August 9th 1862.

[Pier *v.* Duff.]

Pier, the defendant, having recovered a judgment against one John Lyon, issued an execution against him, under which the sheriff, on the 24th of July 1862, levied on three rafts of lumber lying in the Allegheny river. Duff claimed that the lumber belonged to him, under a sale from Lyon.

Lyon, the defendant in the execution, was the owner of timber land in Clarion county, on which he had a saw-mill; he testified that the lumber was cut from his land, and sawed at his mill in partnership, as to the sawing, between himself and his son-in-law, Jacob Mong. The boards were Duff's (the claimant) as soon as they were sawed, in payment to Duff for money and provisions furnished by him to witness, to enable him to carry on his business: the amount of his indebtedness to Duff was about $1200. The lumber was given into the possession of Mong, who ran it to Pittsburg, where witness gave possession to Duff, whose name he marked on it at his request: this was done before the levy. Mong left witness in charge of his interest in the lumber. Witness had delivered the lumber to Duff in Clarion county at a place designated by Duff. The lumber was rafted to Pittsburg by Lyon and Mong, " dropped down to Heath, Duff & Co.'s mill" in Pittsburg: witness took charge of it exclusively as Mong's agent: witness sold some of the lumber as the property of Duff & Mong, and paid the proceeds to them.

F. K. Duff, a son of claimant, testified: The rafts were first landed above the mill, and possession delivered to him as agent of the claimant; the lumber was marked " Duff & Mong;" the delivery was ten days before the levy, but the lumber was not at the claimant's landing during all that time; witness put cables on them. The claimant gave evidence also that the lumber was put on his books to the credit of Lyon.

The defendant gave evidence for the purpose of showing that the lumber was in the possession of Lyon at the time of the levy.

He also proposed to prove by witnesses whom he called, " that from the time John Lyon brought the lumber in controversy to Pittsburg, up to the date of the levy, and afterwards, while in custody and care of the lumber, he declared, repeatedly, that it belonged to him." " What declarations, if any, John Lyon made, from the time he brought the lumber there, on the 27th of June, up to the time he left, as to the ownership of this lumber." " The declarations of John Lyon, made from the time he brought the lumber to Pittsburg, up to the time of the levy, and afterwards, and while he was in custody and charge of the lumber, as to his ownership of it, and this for the purpose of rebutting the testimony of John Lyon as to the capacity he acted in, while here in charge of the lumber."

These offers were objected to, and rejected by the court, who said: " We will allow any declarations made by Lyon, previous

[Pier *v.* Duff.]

to the sale to Samuel Duff, the plaintiff, to be given in evidence, for the purpose of showing that he owned the property at and before that date."-

The court sealed several bills of exception for the defendant.

The plaintiff's point was:

"If the jury believe that, before the levy by the sheriff on the lumber in controversy, the plaintiff and John Lyon went to the place where the lumber was lying in the Allegheny river, and John Lyon there agreed to relinquish the lumber, and the plaintiff agreed to accept it, and credit the value thereof on a debt due and owing by John Lyon to him, the plaintiff; that therupon, the lumber was marked with the plaintiff's name, and by the plaintiff, or his agent, moved or conveyed to the premises of the plaintiff's agent, the general depot for plaintiff's lumber; and that, at the time the levy was made, the lumber in controversy was at this general depot, marked with plaintiff's name, mingled with other lumber and boats belonging to the plaintiff, and in the custody and under the control of plaintiff's agent, the plaintiff is entitled to recover, unless *actual fraud* is shown; notwithstanding they may believe that John Lyon remained about the lumber, looking after the interest therein of a third party, to wit, Jacob Mong."

To which the court (Stowe, J.) answered: "Though under some circumstances this might not avoid the conclusion of legal fraud, under the evidence in this case this point is affirmed."

The defendant's points were:

"1. To constitute a sale or transfer of personal property, good as against judgment and execution creditors, the party who relies upon such sale must prove to the satisfaction of the court, as well as of the jury, that a sale of the property in controversy was actually made, the time of making such sale, the terms of the sale, including the price to be paid, the payment of the price, and that the possession of the property was delivered by the seller to the purchaser at the time of the sale, or within such reasonable time thereafter as the nature of the property will admit of, and that the possession of the purchaser, under such sale, must be continued and exclusive: that is, it must not be a mixed possession of the seller and purchaser, and that, if all or any of these requisites be wanting, such sale is void in law as to creditors, without regard to the intention of the parties.

"2. There is no evidence in this cause showing, or tending to show, that Samuel Duff, the plaintiff, agreed to pay any specific price for the lumber in controversy, nor that he actually paid any price whatever therefor, nor that he ever had the exclusive possession of said lumber at any time previous to the date of the levy, and that, therefore, the alleged sale was fraudulent in law, and the plaintiff cannot recover."

[Pier *v.* Duff.]

The court disaffirmed both points, and further charged:—

"We can find nothing in this case which will, in our opinion, justify us in telling you that, under all the facts in evidence, this sale was a legal fraud, and that therefore the plaintiff cannot recover. The case is then submitted to you as one of actual fraud, and, in this view, if you find that an arrangement was honestly made by Lyon and Duff, preceding the alleged delivery of this lumber to Duff, and in pursuance of that arrangement, this property was transferred to Duff by Lyon—taken possession of by his agent for him, and retained in possession up to the time of the levy, and that, throughout the whole transaction, Duff acted honestly and in good faith in relation to the matter, the plaintiff can recover, even though Lyon, after the alleged delivery, continued to look after this lumber, for the purpose of taking care of the interest of his son-in-law, Mong."

The verdict was for the plaintiff.

The defendant took out a writ of error.

He assigned nine errors; three to the rulings as to the evidence; the remaining six to the answers to the points and the charge of the court.

*B. F. Lucas* (with whom were *A. G. Lucas* and *J. Mellon*), for plaintiff in error.—The evidence rejected tended to prove fraud: Price *v.* Junkin, 4 Watts 85; Rogers *v.* Hall, Id. 359; McKee *v.* Gilchrist, 3 Id. 230; Irwin *v.* Keen, 3 Whart. 347; Deakers *v.* Temple, 5 Wright 234; Bredin *v.* Bredin, 3 Barr 81. The change of possession was not sufficient: Babb *v.* Clemson, 10 S. & R. 419; Young *v.* McClure, 2 W. & S. 147; Carpenter *v.* Mayer, 5 Watts 483; McBride *v.* McClelland, 6 W. & S. 94; Barr *v.* Reitz, 3 P. F. Smith 256.

*L. B. Duff,* for defendant in errror.—The interest sold to Duff was undivided, and by circumstances beyond his control the possession remained in the assignor: Hugus *v.* Robinson, 12 Harris 9; Barr *v.* Reitz, *supra.*

The opinion of the court was delivered, January 3d 1870, by

SHARSWOOD, J.—This was a feigned issue under the Sheriff's Interpleader Act, to try the title to three rafts of lumber levied on as the property of John Lyon. Lyon owned the land on which the timber grew and the mill at which it was sawed. One-half of it belonged to Mong, the son-in-law of Lyon, for the consideration of his having manufactured it into boards. They worked on the shares, and were therefore tenants in common of the product. According to Lyon's testimony, he had agreed, before the timber was cut, that Duff should have his half of it, and apply the proceeds to the payment of an old debt of more than $1100; but on

[Pier v. Duff.]

the other evidence, apart from his, it appeared that Lyon accompanied the lumber to Pittsburg, and that there Duff or his agent marked it with the name of "Duff & Mong," and floated it down to a mill of Heath, Duff & Co., and there fastened it by lines in the customary mode. Lyon remained at Pittsburg boarding at a house somewhere in the neighborhood of the rafts, for the purpose, as is testified, of taking care of Mong's interest, and while there, after the marking and removal, but before the levy, he sold a part of the lumber to a man named Pearson, and accounted for the proceeds to Duff & Mong. The question upon all the evidence was whether there was a bonâ fide transfer to Duff, and with such delivery of possession as the law requires.

The first two assignments of error may be examined together. They are grounded upon exceptions taken at the trial to the rejection of evidence offered of declarations by Lyon as to the ownership of the lumber; that it belonged to him, after the marking and after the levy, up to the date of the levy and afterwards. It is clear, and a point which has not been and cannot be disputed, that the declarations of a grantor, after the grant, cannot be given in evidence to impeach or affect the title of his grantee. There are undoubtedly recognised exceptions to this rule, falling within other principles. Thus if a grantor is permitted by the grantee to remain in actual possession of the thing granted, what he says may be given in evidence on the principle that what a man says who is in possession of either lands or goods, is admissible to prove in what capacity he is there. But this exception cannot be extended to a mere constructive possession. The possession is a fact, and how it is held is a fact, and this may be shown by the declarations of the possessor on the same grounds upon which mere hearsay is permitted when it forms part of the res gestœ. Mr. Greenleaf very properly so classifies it: 1 Greenl. on Ev., §§ 108, 109. It was not offered to prove declarations made by Lyon while in actual possession, but only while in custody and care of the lumber. This would go far beyond the reason of the exception, and would be fraught with great danger to the rights of persons who are obliged to commit the care and custody of their goods to others, and may do so safely, provided they do not put them in actual possession. This would be the case of a mere servant left in charge of a house and furniture during the temporary absence of his master. The principle has no application to such a case. All the acts of Lyon subsequently to the marking were referable to his capacity as agent for Mong, and if he had been in actual possession as such agent, it may be well doubted whether his declarations should have been received to affect Duff. The declarations of one tenant in common cannot be given in evidence to impeach the title of his co-tenant: 1 Greenl. on Ev., § 176; Dun v. Brown, 4 Cowen 483. An admission by one

during his tenancy, under whom one of the plaintiffs claims, affects such plaintiff only: Grant *v.* Levan, 4 Barr 393. Tenants in common have no unity of title or community of interest which will make the declarations of the one admissible against the other. They have unity of possession only. A person not in actual possession, who is authorized to sell, is a mere broker, and not even constructively in possession. His declarations cannot be admitted to affect the title of his principal. This, at the utmost, was all that was shown of any relation or connection between Lyon and Duff after the sale and marking. Another ground upon which the admissibility of the evidence proposed and rejected has been strenuously urged is, that it had a tendency to prove actual fraud. There is no doubt that if there be any, even very slight, evidence of complicity between the grantor and grantee in a design to defraud creditors, the declarations of the one are admissible against the other, although made after the date of the grant: McKee *v.* Gilchrist, 3 Watts 230; Rogers *v.* Hall, 4 Id. 359; Irwin *v.* Keen, 3 Whart. 347; Peterson *v.* Speer, 5 Casey 478; McDowell *v.* Rissell, 1 Wright 164. But this exception rests also upon another and distinct principle of the law of evidence: 1 Greenl. on Ev., § 111. I have looked in vain through the notes of the testimony for any, the slightest, evidence to implicate Duff in any design to defraud the creditors of Lyon. It has not been pointed out either in the oral or printed argument of the counsel for the plaintiff. I need not stop to argue that the declarations of the grantor after the grant are not competent, without more, to show that there had been no change of possession.

The third assignment of error is to the rejection of an offer of the same evidence after the deposition of Lyon had been read by the plaintiff below "for the purpose of rebutting the testimony of Lyon as to the capacity he acted in, while here in charge of the lumber." But Lyon had not been asked in his cross-examination by the plaintiff in error as to these alleged contradictions, and of course no opportunity had been afforded to him to explain them. In such a case the rule is very well settled that the evidence is not admissible: 1 Greenl. on Ev., § 462; The Queen's Case, 2 Brod. & Bingh. 284; McAteer *v.* McMullen, 2 Barr 32; Wertz *v.* May, 9 Harris 274.

The remaining six assignments of error may be considered as one. They present the same question, whether there was any evidence of such an actual exclusive change of title and possession as ought to have been submitted to the jury. Two matters are principally relied on, and were presented in the points made in writing below. It is said that there was no sufficient evidence of any sale; no evidence of any price agreed on, nor of the payment of anything. But neither of these circumstances are abso-

[Pier *v*. Duff.]

lutely necessary in order to pass the property provided there was an adequate valuable consideration. A perfectly valid transfer may be made on credit, or as a mortgage to secure an honest debt. Upon the question of actual fraud such a transaction may require to be more closely scrutinized, but if bonâ fide, and accompanied with the necessary change of possession, its validity, as against creditors, is not to be questioned. In introducing that as an essential element, in his first and second points, the defendant below asked too much, and the court were therefore justified in refusing to answer as requested. Here the evidence was that the goods had been transferred to Duff under an agreement that the proceeds were to be credited to Lyon upon an existing indebtedness. No question was raised as to the bona fides of that debt. The interest of Lyon in the surplus after its payment might have been attached in the hands of Duff, and that was the proper remedy of the creditors of Lyon in order to make it available in payment, if it was an honest and fair transaction. But the second matter urged is that there was no evidence of such an exclusive possession in Duff as the law requires, because of the evidence that Lyon remained about the rafts, and sold part of the lumber, and received the price. But to have taken the case from the jury on this ground, would have been to have overlooked the evidence which presented a question for them, that the capacity in which Lyon acted after the sale and delivery to Duff was merely as agent for Mong, a tenant in common of the lumber, and the sale effected by him was as broker merely, for both parties. "If an undivided part, of a thing be sold," said Lowrie, C. J., in Hugus *v*. Robinson, 12 Harris 9, "a concurrent possession is proper, for it corresponds with the sale." Consider only, what could Duff have done more than he did do to perfect his title to the rafts? It was not in his rightful power to exclude Mong or his agent from concurrent possession, for that would have been a wrong—an actual ouster, and would have subjected him to damages in an action of trespass or trover. He marked the lumber plainly with the name of "Duff & Mong," and he moved it to his own mill and fastened it there. He gave all the notice to the world that could reasonably be required of his title and possession to an undivided half. There was no error, therefore, in the answers to the points or the charge, and the question was properly submitted to the jury.

Judgment affirmed.