# FOURTH NATIONAL BANK *v.* ALBAUGH.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH
CIRCUIT.

No. 159.   Argued January 29, 30, 1903.—Decided February 23, 1903.

Cross, who was president of a bank and had been misusing its funds, gave to Martindale two instruments of assignment, providing that Martindale should pay himself for any paper on which Cross and Martindale were mutually makers or indorsers. The bank and other parties held such paper. Cross killed himself the day after the assignment was given. There was an earlier assignment to Martindale as trustee. The receiver of the bank alleged that the earlier assignment was made to protect the bank. Martindale was the only witness as to delivery of the assignment and admitted that it was for the benefit of the bank but only to a limited amount. *Held*, in an action in which other holders of paper made by Cross and Martindale sought to obtain the proceeds of sale of the property assigned, that it was not error to admit testimony that Martindale had stated that the earlier assignment had been made to secure the bank generally for Cross's liability thereto.

THE case is stated in the opinion of the court.

*Mr. T. F. Garver* for appellants.   *Mr. J. B. Larimer, Mr. Frank Hagerman* and *Mr. C. N. Sterry* were on the brief.

*Mr. Joseph R. Webster* for appellees.   *Mr. J. Jay Buck* was on the brief.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill in equity brought to require the defendant Albaugh to apply a certain fund to payment of debts due to the Fourth National Bank of St. Louis from one Cross, of whose estate the defendant Newman is administrator, and from the defendant Martindale. By cross bill and intervening petitions the other appellants set up similar claims. The fund is the proceeds of property of Cross sold by agreement. The appellants claim under an alleged assignment of the property by Cross to Martindale as trustee, dated July 15, 1898, and

another assignment to Martindale dated November 15, 1898. The former instrument contains the provision " the said Martindale . . . is to pay himself for any paper upon which he and I are mutually makers or indorsers." The debts due to the appellants were on paper of this description, and they claim the benefit of the security on this ground. The later assignment was given to Martindale, according to his testimony, also as security for similar liabilities. It needs no special mention.

The defendant Albaugh, as receiver of the First National Bank of Emporia, claims the fund under an earlier assignment to Martindale as trustee, dated March 4, 1898. Cross was president of this bank and had been misusing its funds. Albaugh contends that this assignment was made for the purpose of securing the bank, and if that fact is established there will be nothing left for the appellants, assuming that otherwise they make out their case. Only Cross and Martindale were present when the assignment was delivered, and as Cross killed himself on November 16, 1898, Martindale alone could testify as to the delivery and purposes of the instrument. He was put on as a witness for the plaintiffs, and on cross-examination testified to the delivery of the paper and by implication to the trust being in favor of the bank, but he limited it to a sum of $7500, which amount he testified that Cross said he wanted to use in a particular manner. Exceptions were taken to allowing the cross-examination to be extended to these facts. Subsequently other witnesses were allowed to testify, subject to exceptions, that at different times out of court Martindale had stated that the assignment of March 4 was made to secure the Emporia bank generally for Cross' liability to it. There was a decree for the defendant Albaugh in the Circuit Court, which was affirmed on appeal by the Circuit Court of Appeals. 107 Fed. Rep. 819. An appeal then was allowed to this court.

The only error alleged which it is necessary to consider is the admission of the above evidence. Indeed, that is the only ground on which the appeal can be based. If that evidence was competent and Martindale's declarations were believed, the receiver's case was proved. If it should have been excluded,

the decree would be hard to support either on the other evidence to the same point or on the suggestion that the appellants had not proved what the burden lay on them to prove.

So far as the cross-examination of Martindale goes, we see no occasion for reversing the decision of the court. *Wills* v. *Russell*, 100 U. S. 621, 626. Nor do we think the suggestion material that the defendant thereby made Martindale his own witness. The evidence of Martindale's declarations was put in not merely to contradict what he said on the stand, but as evidence largely relied on to prove the facts which he declared.

It is said that as soon as the appellants' interest under the later assignment had vested Martindale could do nothing to destroy it; that he could not release it, and that therefore he could not end it obliquely by a declaration. The conclusion does not follow from the premises, granting those premises for the purpose of argument, although they presuppose the rights of the appellants under the later instruments to be established. To destroy by release is one thing, to destroy in the sense of disproving or qualifying by proof is another. The latter is free to any one who knows the facts. There is no doubt, of course, that Martindale had a right to testify to what he was shown to have declared, however bad it might be for the appellants. Therefore the only question is whether his declaration was some evidence as against them of facts which certainly might have been established by his oath.

If ever a declaration not made under oath is to be admitted against any other than the person making it, it should be admitted in this case. The declaration was obviously against interest. It was the only evidence in the nature of things that could be had, when Martindale haltingly denied the fact upon the stand. If we were to take it very nicely, it simply did away with a qualification engrafted by Martindale upon his testimony that the instrument was security for the bank, and made it easier to accept the principal fact without the qualification. The appellants say that they have a standing under the instrument independent of Martindale. So no doubt they have for some purposes, if we follow the somewhat sweeping and undiscriminating notion of equity embodied in many decisions to be

found. Nevertheless, they claim in Martindale's right as against the estate of Cross or any prior assignee. The fact that equity gives them a right to have the security applied does not enlarge or change the character of the security, and that was, as we have quoted, to enable Martindale "to pay himself for any paper" on which he was liable with Cross. The appellants get their rights from and through Martindale. Their right is only to have Martindale's right enforced as it was on July 15 or November 15. *Cunningham* v. *Macon & Brunswick R. R. Co.,* 156 U. S. 400, 419. It even was argued on this ground that it appeared from other evidence that Martindale had no equity as against the Emporia bank, and that therefore the decree could be upheld. But, as we have said, the evidence objected to was too important not to have had an influence on the decision, and therefore we confine ourselves to the consideration of that.

It may be urged that, even if the appellants get their rights by subrogation, (and it is to be noticed that the only claim made in their pleadings is to be subrogated to the rights of Martindale,) still their rights are independent when the subrogation is complete. In reply we fall back upon the distinction between admissions and an attempt to release the rights. The distinction was recognized in England in the case of a suit by a naked trustee. If he undertook fraudulently to release the cause of action and his release was pleaded, the plea would be ordered off the files. *Innell* v. *Newman,* 4 B. & Ald. 419. See *Payne* v. *Rogers,* 1 Dougl. 407; *Anon.,* 1 Salk. 260; *Troeder* v. *Hyams,* 153 Massachusetts, 536, 538. But his admissions were evidence for the defendant. *Bauerman* v. *Radenius,* 7 Term Rep. 663; *Craib* v. *d'Aeth,* 7 Term Rep. 670, *n.* (*b*). The analogy by no means is perfect, but it is sufficient. In these days, when the whole tendency of decisions and legislation is to enlarge the admissibility of hearsay where hearsay must be admitted or a failure of justice occur, we are not inclined to narrow the lines. The interest of Martindale continued, the appellants claim through it, and we are of opinion that, under the circumstances, admissions by Martindale contrary to that interest properly were let in. Cases of admissions by a trustee having no interest in the suit may stand on different ground.

The decree is objected to as granting affirmative relief to Albaugh against his co-defendant Newman. As the appellants are dismissed out of court, the error, if it was one, does not concern them.

*Decree affirmed.*

Mr. Justice Brewer and Mr. Justice Peckham dissented.