THE STATE OF KANSAS V. ROY PUGH.

No. 15,334    (90 Pac. 242.)

SYLLABUS BY THE COURT.

1. EVIDENCE—*Impeachment of a Witness—Cross-examination as to Collateral Matters.* On cross-examination a witness may be interrogated, for the purpose of impairing his credibility, concerning his past conduct and character, and as to specific acts which tend to discredit him, although such acts may be irrelevant and collateral to the principal controversy in the case.

2. PRACTICE, DISTRICT COURT—*Procedure at the Trial—Discretion—Review.* Trial courts are charged with the duty of enforcing proper rules for the transaction of business and the conduct of trials. before them, and reviewing courts will not interfere therewith except in cases where the rights of the party complaining have been prejudiced.

3. INSTRUCTIONS—*Interpretation.* Each instruction given by the court must be interpreted with reference to the other instructions given and the pleadings and evidence in the case; if, when so considered, its language is not misleading, it will be upheld.

4. VERDICT—*Form.* A verdict will be sustained as to form, if the meaning and intention of the jury can be clearly ascertained therefrom.

Appeal from Republic district court; WILLIAM T. DILLON, judge. Opinion filed May 11, 1907. Affirmed.

*Fred S. Jackson,* attorney-general, *Charles D. Shukers,* assistant attorney-general, and *B. T. Bullen,* county attorney, for The State.

*Hugh Alexander,* for appellant.

The State v. Pugh.

The opinion of the court was delivered by

GRAVES, J.: Appellant was convicted in the district court of Republic county of the unlawful sale of intoxicating liquors, and appeals. The bill of exceptions contains numerous assignments of error, but only those which are insisted upon in the brief will be considered.

It is claimed that the court erred in permitting improper questions on the cross-examination of Henry Oliver, who was produced as a witness for the defendant. To understand the force of this and other objections made by the appellant it is necessary to know something of the general features of the case and the relation of the witnesses thereto. Defendant was charged with selling beer to Raymond Ryser, who was the nephew of Albert Miller, the prosecuting witness. After the state rested the defendant put Henry Oliver on the stand for the purpose of discrediting the testimony of Seth Miller, an important witness for the state, by showing that the latter had made statements prior to a former trial of the case before a justice of the peace, from where it was appealed to the district court, indicating a hostile feeling toward the defendant. When Seth Miller was on the witness-stand for the state, on cross-examination, he testified in part as follows:

"Ques. Do you remember of being at Sunday-school the day before this trial came up at Cuba? Ans. Yes, sir."

"Q. After Sunday-school did you not state there and then in the presence of some of the people who were there: 'To-morrow is the day we are going to put the fixings to Roy Pugh'? A. That is part of it."

"Q. State your language. A. I said: 'To-morrow is the day we will put the fixings to Roy Pugh or him to us.'"

On direct examination Henry Oliver said:

"Ques. You may state what, if anything, Seth Miller

said right after the dismissal of Sunday-school, in the presence of whoever was there, in regard to what he was going to do in the Pugh case the following day. Ans. He said the next day was the day they was going to put the fixings to Roy Pugh.

"Q. What else did he say? A. That is all I heard him say about it."

On the cross-examination of Oliver the county attorney attempted to show that the witness was unreliable. The entire examination was objected to, and is here given; it reads:

"Ques. You testified, did you not, down in the court below? Ans. Yes, sir.

"Q. You had a talk with me, did you not, in the presence of this gentleman here, as to what your evidence would be in the trial down there? A. Yes, sir.

"Q. At that conversation you told me, did you not, that you had purchased beer of him?" [Objected to.]

"By Mr. Bullen: I am simply questioning this boy to show his character for truth and veracity; I will show that this boy's word is not worth anything. . . . ." [Overruled and request denied.]

"Q. You were subpœnaed down there for the state? A. Yes, sir.

"Q. When I got down there I got a room in the hotel to talk with the witnesses to find out what they were going to testify, did I not? A. I guess you did.

"Q. And you came up in the room at my request to talk with me? A. Yes, sir.

"Q. Mr. Miller was there, was he not? A. Yes, sir.

"Q. I asked you there what you would testify, did I not? A. Yes, sir.

"Q. Did you not tell me there on the stand that you could testify that you had purchased beer of him; you and your brother? A. No, sir.

"Q. You say you did not tell me that? A. No, sir; I did not say my brother was with me at all.

"Q. You told me that you bought beer, did you not? A. I said I bought it myself and I supposed it was beer. I did not say it was beer.

"Q. Then, after telling me that, did you not go on the stand about three hours afterward, and when I asked you the question as to whether or not you had purchased beer of the defendant did you not then say

that you had not bought beer of him, and that you had not told me so when I asked you if you had not told me that you had? A. I told you the truth both times. I told you that Seth Miller and ——— was with me. I bought it for them, and not for myself."

"Q. After you had told me that you had bought beer of Mr. Pugh, the defendant, in the room where I had invited you, did you not then afterward go on the stand and testify that you had not told me that you had purchased intoxicating liquor of him? A. I did not say I bought beer. I never did because I never tasted beer in my life; never tasted any kind of beer. I told you I had bought what I supposed was beer; I did not open it.

"Q. When you were talking in the room you said it was beer? A. No, I said I did not know it was beer.

"Q. When you were down in the lower court you admitted, did you not, that you had told me those things? A. It was not me. That was my brother.

"Q. Who was it? A. My brother.

"Q. You did not then, at the trial down below, testify that you had bought anything intoxicating, or bought any beer of him? A. I said I bought a bottle I supposed was beer.

"Q. Did you say that on the trial? A. Yes, sir."

When the prosecuting witness was cross-examined by the defendant an attempt was made to show that the witness offered to compromise and settle the suit for a sum of money, and that his object in making the complaint was general hostility toward the defendant and his family. On redirect examination by the county attorney he was asked to explain why he brought the suit, and in answer thereto he said: "Because it was known all over the neighborhood that he was selling whisky."

Complaint is made that the county attorney and the court were each guilty of misconduct—the former in his opening statement to the jury, in informing them of the trial before the justice of the peace, and in stating that the defendant was tried there on four counts and convicted on one. When objection was made he promptly withdrew the statement, but in-

sisted that he had a right to make it. He also assumed that the defendant was guilty as charged, and had been engaged in selling beer as a business. He also placed on the table, in full view of the jury, a bottle upon which there was a label showing that it contained beer.

On further examination of Henry Oliver the witness told the county attorney that the conversation about which he was talking occurred with the brother of the witness, to which the county attorney replied: "I remember your brother. I will fix him when he comes up." On objection this was stricken out by the court.

The misconduct of the court, when particularized, consists of its failure to rebuke the county attorney for his misconduct, thereby leaving the jury to infer that such conduct was proper practice. A few other complaints are made of the same general nature and of about the same importance, and they may all be considered together.

The sole purpose of witness Oliver was to discredit the testimony of Seth Miller, who was one of the state's principal witnesses, and the object of the cross-examination of Oliver was to discredit him as a witness. Under such circumstances it was proper for the court to give wide latitude to the county attorney in such examination. The extent permissible in such cases must be left to the discretion of the trial court, whose action will not be disturbed by this court except for such abuse as works an injury to the party complaining. In the case of *The State v. Abbott*, 65 Kan. 139, 69 Pac. 160, it was said:

"There is no better method of sifting the conscience and testing the veracity and credibility of a witness than by cross-examination, and there is abundant authority holding that for the purpose of impairing the credibility of the witness he may be cross-examined as to specific acts tending to discredit him, although such acts are irrelevant and collateral to the main issue." (Page 141.)

The State v. Pugh.

In the syllabus to the case of *Fourth National Bank v. Albaugh,* 188 U. S. 734, 23 Sup. Ct. 450, as reported in 47 L. Ed. 673, it was said:

"The discretion of the trial court in permitting the cross-examination of a witness to be extended beyond the limits of his direct examination will not be reviewed on appeal." (See, also, *Bassett v. Glass,* 65 Kan. 500, 70 Pac. 336; *The State v. Collins,* 33 Kan. 77, 5 Pac. 368; *The State v. Greenburg,* 59 Kan. 404, 53 Pac. 61.)

In the conduct of trials before a jury much must be left to the good judgment of the trial court, and reviewing courts can only interfere therewith when the rights of the complainant appear to have been prejudiced thereby. In cases where the evidence is very close injury will be inferred more readily from irregularities occurring during the trial than when the evidence is strongly against the party complaining and justice seems to have been done. In this case no evidence whatever upon the question of guilt was presented by the defendant, although several witnesses were placed upon the stand by him who were in a situation to know, being members of his own family. The only effort made in the way of a defense was an attempt to discredit the credibility of the witnesses for the state. The conduct of the county attorney in some respects transgressed the rules of strict propriety, and the court might very properly have reprimanded him therefor, but nothing serious occurred, and we are unable to see how the rights of the defendant could have suffered thereby. The earnestness with which defendant's counsel insist upon these irregularities as grounds for reversal indicates that he sincerely feels that, but for them, the defendant would have been acquitted. The record, however, shows that two boys, the son and the nephew of the prosecuting witness, bought beer of the defendant and were intoxicated therewith. This evidence is not in any way contradicted, and we think it was the plain duty of the jury to convict, regardless

of the slight lapses of propriety shown on the part of the county attorney.

Objection is made to an instruction given by the court which reads:

"The law of this state provides that any person who shall sell or barter any spirituous, vinous, malt, fermented or other intoxicating liquors without having a druggist's permit from the probate judge of the county to do so shall be guilty of a misdemeanor, and it is this law which the defendant is charged with violating. In order for you to find the defendant guilty it will be necessary to find from the evidence, beyond a reasonable doubt, first, that the defendant, Roy Pugh, made the sale to the witness, Raymond Ryser, as claimed, and, second, that said sale was made in Republic county, Kansas, the exact time when the sale was made being immaterial, except that it must have been within two years next prior to the commencement of this action, which was on the 13th day of July, 1906."

Counsel contends that the court here assumes as an established fact that the defendant made an unlawful sale of intoxicating liquor. We do not think this the natural or fair interpretation of the instruction. The court was instructing about the sale with the making of which the defendant was charged. That charge is what was being tried. The jury must be credited with some discernment. Any person of ordinary intelligence would understand that by "sale" or "said sale" as used in the instruction the court meant the sale of which the defendant was accused. We cannot discover any error in this instruction. Similar objection is made to other instructions, which it is unnecessary to consider. We have examined them and find no error.

This case was commenced before a justice of the peace, where the paper containing the charge is called the complaint. The case was appealed and tried upon the original papers. The court in its instructions referred to the charge as being contained in the first count of the information, and the verdict found the defendant guilty, as charged in the first count of the

information.    It is insisted that this misuse of terms is reversible error.    It does not appear that any objection was made to this when the verdict was returned. The meaning is clear, and the verdict of the jury is therefore sufficient.    (*The State v. Wade,* 56 Kan. 75, 42 Pac. 353.)

The judgment is affirmed.