THE H. C. JAQUITH CO. *v.* J. Q. SHUMWAY'S ESTATE.

January Term, 1908.

Present:  ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed February 14, 1908.

*Corporations—Servants and Agents—Formal Authorization— When Unnecessary—Directors—Parol Evidence of Their Acts and Decisions—Trover—Ownership—Evidence—Admissibility—Opinions—Bill of Sale—Book Entries—Tax Inventory of a Party—Failure to File—Declarations—Tax Inventory of Third Person.*

In trover for seizing and selling plaintiff's mare on a tax warrant against another, on the issue whether the mare was owned by plaintiff or the delinquent tax payer the burden is on plaintiff.

Corporations are bound by the acts of their servants and agents within the ordinary line of their duty, without a formal vote conferring such authority.

In trover by a corporation for seizing and selling plaintiff's mare on a tax warrant against its manager personally, where the issue was as to the ownership of the mare, plaintiff claiming that, by its said manager, it purchased the mare and six other horses in Boston in 1902, plaintiff was properly allowed to show by its treasurer that before said purchase its directors decided to buy more horses for its use, and sent its manager away to buy them; as that was an act in the ordinary course of business, which was neither claimed nor likely to have been a matter of record.

Plaintiff's treasurer testified that plaintiff bought seven horses in Boston in 1902, one of which was the mare in question, and produced the bill of sale which he testified had been kept in plaintiff's office, and produced a ledger, journal and cashbook and identified them as plaintiff's books kept by him as treasurer, all without objection. *Held*, that it was not error then to allow him to testify that a certain entry in the ledger referred to "the seven horses bought in Boston on that bill of sale," naming the seller, and that another entry represented the purchase price of the horses and the expense of going to Boston for them, although the witness had no personal knowledge of when, where, or of whom the horses were purchased, or of their price, or who made the bill of sale; as in the questioned testimony the witness stated nothing about the purchase of the horses besides what he had previously stated without objection, and it amounted merely to pointing out and identifying the entries as memoranda of the purchase of certain horses received by plaintiff.

Such book entries were admissible only as memoranda to be weighed in connection with the witness's testimony, and it would have been error to have admitted them as independent evidence.

It was error to receive in evidence said bill of sale, which purports to be dated at Boston, November, 1902, and to be given to plaintiff for seven horses, among them, "one blk. mare," which plaintiff claimed was the mare in question, no evidence being offered to show the handwriting or signature nor when or by whom made, nor the identity of any of the horses with the mare in question.

It was error to allow plaintiff's witness to state who owned the mare in question at the time of its alleged conversion, as that must have been either hearsay, or his opinion on the precise question that the jury were to decide.

As bearing on the value of the mare in question, her present owner was properly allowed to testify that when he sold his stage route he reserved the mare because she was a good worker.

Although it appeared that in the winter of 1904, plaintiff's manager, who had not testified, took the mare in question with him to Plymouth, Vermont, where he continued to live and possess and use her till the following August, when she was seized and sold on the tax warrant against him, defendant's evidence, offered as tending to show that the manager owned the mare, that he included her in his tax inventory filed that year with the listers of Plymouth, was properly excluded, as a declaration not authorized by plaintiff; and whether the manager had changed his residence to Plymouth was immaterial.

It appearing that the mare in question was in Plymouth, Vermont, from the winter of 1904, till the next August, when she was seized and sold on the tax warrant, it was error to exclude defendant's evidence, offered as tending to show that plaintiff did not own the mare, that plaintiff filed no tax inventory in Plymouth in the year 1904.

Plaintiff was not entitled to have the jury instructed that they might infer plaintiff's ownership of the mare in question from plaintiff's possession and use of her; but the court correctly instructed that such possession and use were to be considered by the jury with the other circumstances and testimony in the case.

APPEAL from the disallowance by the commissioners on the estate of J. Q. Shumway of a claim presented by The H. C. Jaquith Co. Declaration, trover for a mare seized and sold on a tax warrant against another. Plea, the general issue. Trial by jury at the April Term, 1907, Windham County, *Taylor,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The only issue was as to the ownership of the mare and her value. The mare was taken from the possession of R. B. Jaquith at Plymouth on August 19, 1904, by J. Q. Shumway, as collector of taxes for the town of Jamaica, on a tax warrant against said Jaquith, and by said collector sold at public auction at said Plymouth on August 23, 1904, to satisfy said tax.

Defendant excepted to the claimed failure of the court to comply with his sixth request for instructions, which was as

follows: "If at the time, and for several months next preceding. the taking of the mare by Shumway, R. B. Jaquith had possession, use and control of her and such possession, use and control was so open and apparent that he appeared to be the owner of her, the jury may infer, that though she may have once been the property of the plaintiff, there was some sale or arrangement by which she became the property of R. B. Jaquith."

*Gibson & Waterman, J. K. Batchelder,* and *A. V. D. Piper* for the defendant.

The issue was whether the mare was purchased by plaintiff or by Jaquith personally. Plaintiff was allowed to introduce its own books to show the purchase by itself. The entries were merely plaintiff's own statements of a past transaction, and their admission was error. *Godding* v. *Orcutt,* 44 Vt. 54; *Cross* v. *Bartholomew,* 42 Vt. 206; *Lapham* v. *Kelly,* 35 Vt. 195; *Worden* v. *Powers,* 37 Vt. 619; *Goetz* v. *Bank of Kansas City,* 119 U. S. 551; *Osborn* v. *Robbins,* 37 Barb. 482; *Small* v. *Gilman,* 48 Me. 506; *Wilson* v. *Sherlock,* 36 Me. 295.

The tax inventory of R. B. Jaquith claiming the mare as his property was admissible, it being a declaration of one of plaintiff's principal officers as to the ownership of the mare. 10 Cyc. 947, 948; *Bank* v. *Rogers,* 18 N. H. 255; *Toll Bridge Co.* v. *Betsworth,* 30 Conn. 380.

*William W. Stickney, John G. Sargent,* and *Homer L. Skeels* for the plaintiff.

The ordinary acts of management by the directors of a corporation are not usually the subject of record and must necessarily be shown by parol. *Bank* v. *Dandridge,* 12 Wheat. 64, 82; *Foot* v. *Railroad Co.,* 32 Vt. 633; *Waite* v. *Mining Co.,* 37 Vt. 608.

TYLER, J. The plaintiff seeks to recover in this action of trover the value of a certain black mare which the intestate in his lifetime, as a tax collector, seized and sold as the property of R. B. Jaquith upon a tax warrant against him.

The issue in the trial court was whether the mare was owned by the company or by Jaquith. The burden of proof was upon the plaintiff.

The plaintiff, a corporation, had its place of business and legal residence in Weston, and Jaquith was its president and general manager.

The plaintiff claimed, and its evidence tended to show, that Jaquith, as general manager, on Nov. 1, 1902, bought the mare and six other horses, for the company, of Edgar Snow in Boston, Mass., and paid for them with his own check; that the horses arrived at Ludlow on the same day and were taken by Jaquith and his sons to Weston and placed in his barn there.

No one testified to having witnessed the purchase of the horses, and the record states that the first that was seen of them was when they were being taken from the cars at Ludlow. It seems to have been immaterial, if it were ·a fact, that they were bought in Boston except as it bore upon the question of the purchase of the black mare by Jaquith. The defendant claimed that Jaquith bought her for himself, or that he bought her subsequently, and owned her when she was taken by Shumway.

1. It was competent for the plaintiff to show by the testimony of its treasurer that the directors decided to buy more horses for the company's use, and sent Jaquith away to buy them. This was an ordinary transaction in the course of business, not likely to be, and it is not claimed that it was, a matter of record. Corporations are bound by the acts of their servants and agents within the ordinary line of their duty without a formal vote conferring such authority. *Foot & Hodges* v. *R. & W. R. Co.*, 32 Vt. 633. Judge Aldis remarked in his opinion that this proposition was too plain to need the citation of authorities.

2. H. C. Jaquith, the plaintiff's treasurer, a son of R. B. Jaquith, called as a witness for the plaintiff, testified that the company bought seven horses in Boston in 1902, and that he had a bill of sale of them. He produced it and testified that it had been· kept in the company's office in Weston and that the mare in question was one of the seven horses. The record does not show that any objection was made by the defendant to the admission of this evidence. The witness then produced the company's ledger, journal and cashbook which he identified as the plaintiff's books kept by him as treasurer. He was then shown

an entry on the ledger, under the head of "Teams," and being asked what it referred to, answered: "It refers to seven horses," and being asked what seven horses, he answered: "The seven horses bought in Boston on that bill of sale," and being asked what paper he meant, answered: "Bought of Edgar Snow."

The witness' attention was then called to a similar entry upon the journal and testified in the same way about that entry. He testified that another entry represented the purchase price of the horses and the expense of going to Boston for them. To all these questions and answers the defendant seasonably excepted. The exception cannot be sustained for the reason that the witness stated nothing further in his answers about the purchase of the horses in Boston than he had previously stated without objection. The case states that the witness had no personal knowledge of when, where or of whom the horses were purchased or how much was paid for them, or who made the bill of sale, "except as herein stated." The fair construction of his answers is that he merely pointed out these entries upon the books as memoranda of the purchase of the horses that arrived in Weston November 1, and identified the book entries as such memoranda. It is not reasonable to suppose that the jury understood him as testifying from his own knowledge where the horses were bought.

3. The book entries and the bill of sale were afterwards admitted in evidence under the defendant's exception. The book entries were legitimate evidence only as memoranda which were to be weighed by the jury in connection with and as corroborative of the witness' testimony. *Stillwell* v. *Farwell,* 64 Vt. 286, is directly in point. See, also, *Cross* v. *Bartholomew,* 42 Vt. 206. If the entries were admitted as independent evidence of the purchase, their admission was error. As it is not clear for which purpose they were admitted, we pass this question without deciding it.

4. The bill of sale is dated Boston, Mass., Nov. 1, 1902, and purports to have been given by Edgar Snow to M. H. C. Jaquith Company for seven horses, giving their prices, among them "one blk. mare," which the plaintiff claimed was the mare in question. The handwriting of the bill of sale and signature were not proved, nor was it shown where, or when or by whom it

36

was made except what appears upon its face, and no evidence was offered to show the identity of any horse mentioned in it with the mare in controversy. It only appeared that Jaquith showed the paper to a person at Ludlow when the horses were being taken from the cars and that it has since been with the company's papers in Weston. The admission of the paper was error.

5. The witness H. C. Jaquith was asked by plaintiff's counsel: ''Whose horse was this at the time Mr. Shumway took it?'' and he answered, ''The H. C. Jaquith Company's horse.'' The witness had no knowledge upon the subject, his answer must have been based upon what others had told him, was the expression of his opinion upon the precise question that the jury were to decide, and was likely to mislead them. It was error to admit it.

6. It was competent for the plaintiff to show by Sumner, the present owner of the mare, that when he sold his stage route where she had worked, he kept her because she was a good worker. It was a circumstance bearing upon the value of the mare which was in question.

7. It appeared that after the mare was purchased she remained in Weston until the winter of 1904, during which time she was used in the plaintiff's teams drawing lumber, was driven by the plaintiff's officers and employees and frequently by R. B. Jaquith and his family. It also appeared that in the winter of 1904 R. B. Jaquith moved with his wife to Plymouth and continued to live there until after the mare was taken by Shumway the following August; that Jaquith took the mare with him to Plymouth and kept her in the barn of the O'Brien Lumber Co., of which he was the general and active manager; that he required and used her almost daily in that business and for driving purposes. The defendant claimed that Jaquith changed his residence to Plymouth, and for this purpose offered to show that in the year 1904 he filed with the listers an inventory giving in his poll to that town and that he put in as his property, belonging in that town, eleven horses, one of which the defendant offered to show was the mare in controversy. The offer was excluded as a declaration by Jaquith, not authorized by the company nor made in the course of his duty as an officer thereof. The evidence was properly excluded for the reasons stated by

the court, that Jaquith was not a party to the suit and had not testified, so that the offered evidence could be used to impeach him.   Whether or not he had changed his residence to Plymouth was immaterial.

8.   The defendant offered to show that the plaintiff filed no inventory in Plymouth in the year 1904.   It had appeared that the mare was in Plymouth from the winter of 1904 until the next August.   If she was owned by the plaintiff it was its duty to place her in an inventory and deliver the inventory to the listers of Plymouth.   V. S. 405 makes it the duty of owners of taxable personal property to deliver an inventory thereof to the listers of the town where it is situated on the first day of April.   If the plaintiff omitted this statutory duty it was a fact which the defendant was entitled to have the jury consider as bearing upon the question of ownership.   It was error to exclude the evidence.

9.   The plaintiff was not entitled to a charge that the jury might infer ownership in the plaintiff from its possession and use of the mare as shown by the evidence.   The court correctly charged that such possession and use were to be considered by the jury with the other circumstances and the testimony in the case.

*Judgment reversed and cause remanded.*