M. Ella Cameron *v.* Floyd N. Blanchard et ux.

Special Term at Rutland, November, 1934.

Present: Powers, C. J., Slack, Moulton, Thompson, and Sherburne, JJ.

Opinion filed January 2, 1935.

*Novak & Bloomer* for the defendants.

*Leonard F. Wing* and *Clayton H. Kinney* for the plaintiff.

54

Powers, C. J. This is an action of replevin for a herd of cows. Verdict and judgment were for the plaintiff. The defendants excepted.

The evidence was such that a jury would be warranted in finding the following facts: In the spring of 1932, the plaintiff through her father, Alexander Cameron, acting as her agent, bought the cows in question, with her own money. Alexander had them on a farm called the Buffum farm, near the city of Rutland, which he occupied as a tenant, and where a sister-in-law lived and acted as housekeeper. Later on, trouble arose between Alexander and this housekeeper, which progressed far enough to threaten litigation. This was in July, 1932. Alexander deemed it wise for him to leave the State, and on the 16th or just before, he sublet the Buffum farm to the defendant Floyd for the remainder of his term, and let the cows above referred to go with the farm. On the 16th, when Alexander had completed arrangements to go away, Floyd suggested to him that he had better make a paper showing that the plaintiff owned the cows. He agreed to this, and Mrs. Blanchard drew up a paper which he signed and left with her. He then fled the State. This writing has not appeared, but Mrs. Blanchard left with the plaintiff a paper writing dated July 16, 1932, and purporting to be a promissory note signed by her for $1,500, payable to Alexander Cameron, without words of negotiability, in one year from its date, and naming the consideration as being twenty-four cows bought of Alexander by her. These were the cows in question. Soon after the plaintiff received this writing, not understanding it, she asked Mrs. Blanchard if it meant that she had bought the property, and Mrs. Blanchard replied that it did not, and that it was given for the sole purpose of showing that the plaintiff owned the property. On other occasions, Mrs. Blanchard gave the plaintiff the same assurance. Later, Mrs. Blanchard made claim of title to the cows, and had them set to her in the town list. The defendants lived together as husband and wife on a farm of their own in Rutland city, and had a milk route there. They carried on business in their joint names, usually, and Floyd buys and sells cattle for his wife. She never paid anything on the note, and he never paid much on the lease.

After Alexander had been out of the State for a few weeks, the trouble with the housekeeper was fixed up and he returned. From time to time he called on Floyd for payment of the rent

then overdue, but obtained nothing but promises. It was finally discovered that the defendants were claiming title to the cows; and when, on April 29, 1933, the plaintiff tried to talk by telephone with Floyd about her having the cows tested, he notified her that if she wanted to know about the cattle, she should go to his lawyer, Mr. Bloomer, and "slammed up the receiver." Thereupon this suit was brought. The defendants failed to answer, so a general denial is implied. P. L. 1574.

There was much bickering at the trial, and, apparently, there was an unusual amount of over-robust swearing. Altogether the case made below was one especially appropriate for the determination of a jury of practical and sensible men. Such a jury the parties undoubtedly had. It accepted the claims of the plaintiff, and it necessarily follows that it rejected those of the defendants. The record bristles with exceptions, but these or most of them are so inadequately briefed that we would be justified in passing them over without consideration. However we deem it best to consider those hereinafter referred to—and they include all that are of real importance—without scrutinizing the quality of the briefing too technically.

Though the defendants attempted to keep their defenses separate, it fairly appears that both relied, in part at least, upon the title Mrs. Blanchard acquired from the sale or pretended sale of the cows to her by Alexander Cameron. If that sale was really made, it. bound the plaintiff, for it was undisputed that Alexander was her agent in buying and selling the cows. The evidence disclosed that he did sell some of the cows and bought others to replace them and sold other of the property, even after the sublease to Floyd Blanchard.

Subject to Mrs. Blanchard's exception, evidence was received that on several occasions, in her absence, Floyd admitted that the plaintiff owned the cows. This was error. The evidence did not show that this particular property was owned jointly by the defendants. Without such a joint ownership or a joint purpose or design, the admissions of one party are not evidence against the other. *In re Waterman's Will*, 102 Vt. 443, 447, 150 Atl. 65. Nor did the agency of Floyd in selling cows for his wife justify using his admissions against her, because he was not then selling the cows or negotiating a sale for her. It is only when an agent is acting within the scope of his authority and his admission relates to an act or negotiation con-

nected therewith, that it is admissible against his principal. *Taplin & Rowell* v. *Marcy*, 81 Vt. 428, 441, 71 Atl. 72; *First Nat. Bank* v. *Bertoli*, 87 Vt. 297, 311, 89 Atl. 359, Ann. Cas. 1917B, 590; *In re Barron's Estate*, 92 Vt. 460, 466, 105 Atl. 255; *Gilfillan* v. *Gilfillan's Estate*, 90 Vt. 94, 100, 96 Atl. 704.

■ It remains to consider whether this error was rendered harmless by the subsequent action of the court. That these admissions were admissible against Floyd is not disputed. So, if they had been properly restricted when received, no error would have been committed. But it was not until the close of the evidence, that the court informed the jury that it was not to consider Floyd's admissions as evidence against his wife. It then instructed the jury that it was not to so consider them, and withdrew them from the consideration of the jury so far as Mrs. Blanchard's defense was concerned. The court also properly instructed the jury in the charge in regard to this. It did not make specific reference to each occasion when Floyd asserted that the cows belonged to the plaintiff, but covered the matter clearly.

We cannot say that this delayed action of the court resulted in any harm to the defendants, or either of them. It was all made plain to the jury, and we do not doubt that it followed the instructions of the court. The exception is not sustained.

■ Francis Seward, a cattle dealer, was a witness for the plaintiff. He testified, in effect, that he went with Floyd Blanchard down to the Buffum farm to see some cattle that Floyd wanted to sell. That the question of ownership was not then brought up. That after he had looked over the cattle, Floyd took him to Mr. Tuttle's where the plaintiff then was. That in the presence of Floyd he talked with the plaintiff about the cattle with a view of purchasing them. That he also talked with Tuttle, to whom the plaintiff "turned him over," but the price asked was not satisfactory, and he did not buy. In cross-examination, he was asked, by a question manifestly referring to what occurred at the Buffum farm, if he learned from Floyd that the cattle belonged to Mrs. Blanchard. This was objected to and excluded. The defendants excepted.

It is not definitely shown whether this question referred to the very cows here in question or others. But, assuming it referred to these cows, it was not error to exclude it. The plaintiff was not present. Whatever Floyd said about Mrs. Blanch-

ard's ownership was hearsay or mere opinion, and was not evidence against the plaintiff. *Jaquith Co.* v. *Shumway's Estate,* 80 Vt. 556, 562, 69 Atl. 157.

There was evidence tending to show that Alexander Cameron transferred these cows to Mrs. Blanchard to protect them from attachment by his housekeeper. The defendants excepted to the failure of the court to charge the jury as to the law in regard to fraudulent transfers of this kind, and insisted that if Alexander was guilty of this fraud, the law would not aid him in recovering the property. The trouble with the defendants' position is that there was nothing to connect the plaintiff with the transaction. She never authorized her father to use her property in that way. She was in no way connected with the pretended sale. She had nothing to gain by it. She did not ratify or recognize it. There was no error in the matter covered by this exception.

Nor was it error for the court to omit to call the jury's attention to the plaintiff's admission that her father had authority to buy and sell cows for her. That question was not raised. The plaintiff's case was not in any way built up on the theory that Alexander did not have authority to sell, but upon the claim that he did not sell to Mrs. Blanchard. Our attention is not called to any evidence or claim based upon lack of authority. The only theory that the plaintiff advanced was that no sale, valid or fictitious, was made; that the paper that Alexander referred to was not a note or bill of sale, but merely a writing to show that the plaintiff owned the property.

There was evidence tending to show that the defendant Floyd had sold some of these cows, that Mrs. Blanchard had mortgaged all of them, and that they removed five of them on the very day this writ was served. The court charged the jury to the effect that if the defendants were selling or mortgaging the cows, the plaintiff, as owner, would have the right to replevy them without waiting for the expiration of the lease to Floyd. Both defendants excepted. The authority of Alexander to sell the cows did not give him authority to lease them. We do not overlook the fact that he testified that "in all that transaction" he was acting as the plaintiff's agent. There is, however, nothing in the context to indicate that the "transaction" had any reference to the lease.

58

 There is, therefore, nothing to show that the lease was binding on the plaintiff. So she was not obliged to wait until the lease expired before demanding her property. Moreover, as stated above, Floyd was selling cows from this herd, which was a wrongful assumption of the right to do so, and the assertion of a hostile and adverse claim to them. In such circumstances, the owner may proceed to replevy the property without demand. *Oleson* v. *Merrill*, 20 Wis. 462, 91 A. D. 428, 430. ''The wrongful assumption of the property in, or right of disposing of goods, may be a conversion in itself, and render unnecessary a demand and refusal.'' 1 Ch. Pl. *155. ''He who interfers with my goods,'' says Sewall, J., in *Gibbs* v. *Chase*, 10 Mass. 125, 128, ''and, without any delivery by me, and without my consent, undertakes to dispose of them, as having the property, general or special, does it at his peril to answer to me the value in trespass or trover.'' See, also, *Rice* v. *Clark*, 8 Vt. 109, 110. The actions of trover and replevin are so intimately related that these authorities apply here. What has just been said applies with added force to Mrs. Blanchard's exception. She claimed to be a purchaser in possession. She made no claim under the lease, but defended on the ground of ownership. There was, therefore, no occasion, for a demand on her before suit was brought.

 But there was a demand here on both defendants before the writ was served. The officer testified to it, and he was not contradicted. He also testified that the defendants responded to his demand by telling him to take the property. There was no claim made below challenging the sufficiency of this demand and refusal, if the conduct of the defendants' amounted to that. So that question is not before us, though it was referred to at the argument. It may not be amiss to say that the response of the defendants was in the circumstances equivalent to a refusal. If they wrongfully claimed the property, it was their duty to return it to the plaintiff or her agent, the officer. And this means to make what would amount to a manual delivery of it. They could not put upon the plaintiff the risk of selecting the right cows. That their apparent submission to the demand of the officer was intended to pass this risk to the officer is sufficiently indicated by the fact that they omitted and declined to go to where the cows were and help the officer pick them out. The very purpose of a demand in such

cases is to enable the defendant to restore the property, and a sufficient opportunity to do so must be afforded him before service is made. The noncompliance with the demand after a reasonable opportunity to obey it has been afforded is tantamount to a refusal and is presumptive evidence of a conversion, and requires the defendant to produce evidence explaining the omission in a way to rebut the presumption of a conversion. 1 Ch. Pl. *161.

We have said nothing about the motions for a verdict, for the case was too plainly for the jury to require a discussion of them.

*Judgment affirmed.*