## Reichert et al. v. Shuscavage

*Thomas C. Moore*, and *John R. Verbalis*, for plaintiffs.

*Roy B. Pope*, and *Ralph J. Johnston*, for defendant.

PINOLA, J., February 28, 1950.—Defendant has filed exceptions to a decree nisi declaring a deed to her to be a forgery.

On April 19, 1948, a deed was recorded purporting to convey property known as 334 Slocum Street, Swoyerville, from Mary Levitski to her daughter, Mary

Shuscavage, defendant. It purports to have been signed by mark on February 14, 1948, to have been acknowledged on the same day before John T. Harris, a justice of the peace, and witnessed by Paul Baynock and Anastasia Levitski, another daughter. The alleged grantor died March 4, 1948.

Defendant filed exceptions to the following findings of fact:

"(2) Mary Levitski was, since 1921, the owner of property situate on and known as 334 Slocum Street, Swoyerville, Pa.

"(10) The actions of the subscribing witness Paul Baynock were unusual and suspicious and not those of a disinterested, truthful witness.

"(11) Mary Levitski did not execute the deed in question by the mark on February 14, 1948.

"(12) Mary Levitski did not acknowledge the deed in question before John T. Harris on February 14, 1948.

"(13) There was no valid deed in existence at the time of the death of Mary Levitski from her to Mary Shuscavage for the property in question."

To the following conclusions of law:

"(1) The purported execution by Mary Levitski of the deed dated February 14, 1948, was a forgery committed by John T. Harris, Mary Shuscavage, defendant, and others, and was in fraud of plaintiffs' rights as owners of an undivided interest in and to the premises described in said deed.

"(2) The said deed is a forgery, and the acknowledgment is likewise a forgery.

"(3) Plaintiffs are entitled to have the deed cancelled and set aside."

And to the following decree nisi:

"Now, November 9, 1949, it is ordered, adjudged and decreed as follows:

"(1) That the deed dated February 14, 1948, recorded in Deed Book 979, page 290, purporting to be executed and acknowledged by Mary Levitski is invalid, null and void.

"(2) The Recorder of Deeds of Luzerne County is directed to enter on the margin of the record of the deed a copy of this decree.

"(3) That Mary Shuscavage, defendant, shall not alienate or encumber the property.

"(4) Mary Shuscavage, defendant, shall deliver up the deed for cancellation.

"(5) That Mary Shuscavage, defendant, pay the costs."

### Questions Involved

Defendant urges (a) that plaintiffs did not meet the heavy burden which rested upon them; (b) that plaintiffs were bound by the testimony given by Harris when called as of cross-examination; (c) that the chancellor erred in considering testimony of other questionable acknowledgments by Harris, and (d) that the chancellor erred in considering as substantive evidence the declarations of Harris to grantee's counsel that the deed had been executed by him two weeks after the death of the alleged grantor.

### Discussion

We will consider objections (a) and (c) together.

The guiding principles are clear. There is a presumption, in the absence of proof to the contrary, that a deed was executed and delivered on the day it was acknowledged: Herr et al. v. Bard et al., 355 Pa. 578. In rebutting that presumption, parol evidence may be introduced to show that a fraud was practiced not only in the execution of the deed but in the obtaining of the acknowledgment: Heeter et al. v. Glasgow, 79 Pa. 79.

Fraud is not to be presumed without proof, nor upon proof which is slight; it must be established upon satisfactory evidence; it must be sufficiently explicit in its character to fairly rebut the presumption as to the due execution of the deed and the acknowledgment: Cover v. Manaway, 115 Pa. 338.

Our courts give the widest latitude in the uncovering of fraud, and since a signature by mark affords great opportunity for fraud, the chancellor admitted evidence of the two questionable acknowledgments taken by the same justice of the peace, John T. Harris. In the one instance, the date of the deed appears as follows: "FORTY Three." It is dated April 9, 1943, and the rubber stamp indicates that the commission of the justice expires "January, 1952". The deed was recorded October 10, 1947, not so long before the deed in this case was drawn. The commission of Harris in effect on the date of the acknowledgment expired on January 1, 1946, and not in January 1952. In the second instance, the date is typewritten, "FORTY" and then follows a blur, indicating without question an erasure of the year. The acknowledgment is typed in a different type, "3rd July, 1940". An inspection of the paper reveals that the "40" was typed over an erasure. In this case the commission stamp properly indicates expiration "on the first day of January, 1946". This deed is recorded February 17, 1948. The records of the register of wills office showed that grantor had died in January 1940.

In VanDyke v. Thompson, 1 Harrington 109 (Del.), involving a forged deed, the court allowed defendants to impeach the character of one of the subscribing witnesses, the other being dead. It said:

"That probate is an ex parte proceeding. The doctrine contended for by plaintiff would lead to the worst of consequences. A felon convict, or insane man might go before the prothonotary and prove a deed which

though forged, might not be invalidated unless you could attack the witness' character."

Plaintiff suffered a nonsuit and grantee was arrested and imprisoned on a forgery charge.

However, we need not rely on the evidence of the other acts of Harris. We have read the record carefully, and we are satisfied that plaintiffs have produced sufficient substantial evidence, independent of the other acts, to warrant the decree.

Without going into the details, and without considering the testimony relating to the other acts, we reach the same conclusion as the chancellor—the deed is a fraud and a forgery.

We will next consider objection (d), that the chancellor erred in admitting as substantive evidence the declarations by Harris.

In our opinion, these were properly admitted. In addition to the reasons given by the chancellor in the decree nisi, we believe that his declarations that he drew the deed two weeks after the alleged grantor was dead and that "all we have to do (to sustain the deed) is to put the grantor in my office", were properly admitted because having been made under circumstances of trustworthiness, they are admissible, first, under an exception to the hearsay rule as declarations concerning the execution of a document; second, as statements by one having the same or common interest as a party-opponent; third, as statements of a co-conspirator; fourth, as statements of a joint tortfeasor, and fifth, because their admission is required to prevent injustice and fraud.

We are aware of the rule that the prior statements of a witness in which he has given a contrary version are considered incompetent as independent evidence and do not tend to establish the facts therein stated; their only competency is to discredit his testimony:

Dincher v. Great Atlantic & Pacific Tea Company, 356 Pa. 151. This is the orthodox view.

But as the author points out, 3 Wigmore on Evidence (3rd ed.), sec. 1018, p. 690:

". . . this theoretical and artificial nicety is overworked by some courts . . . the opinions are full of directions to trial courts to tell the jurors to use their mental force to ignore in such self-contradicting assertions that testimonial value which the jurors' natural reasoning persists in seeing there."

In the same section, (page 687), Professor Wigmore declares:

"It does not follow, however, that Prior Self-Contradictions, when admitted, are to be treated as having no *affirmative testimonial value,* and that any such credit is to be strictly denied them in the mind of the tribunal. The only ground for doing so would be the Hearsay rule. But the theory of the Hearsay rule is that an extra-judicial statement is rejected because it was made out of Court by an absent person not subject to cross-examination. Here, however, by hypothesis the witness is present and subject to cross-examination. There is ample opportunity to test him as to the basis for his former statement. The whole purpose of the Hearsay rule has been already satisfied. Hence there is nothing to prevent the tribunal from giving such testimonial credit to the extra-judicial statement as it may seem to deserve."

In the first edition of his treatise, Professor Wigmore approved the orthodox view. But now he says:

"Further reflection, however, has shown the present writer that the natural and correct solution is the one set forth in the text above."

In the notes (page 688), Professor Wigmore writes:

"An eminent Federal judge has indicated accord with the view stated in the text: 1933, U. S. ex rel. Ng Kee Wong v. Corsi, 2d C. C. A., 65 Fed. 2d 564, a

Chinese witness testified to a certain person being father of the applicant; at a former hearing he had testified that the same person had no son; held, that this former testimony could be considered by the officers not merely to discredit his present statement; Swan, J.: 'That is an artificial doctrine; practically, men will often believe that if a witness had earlier sworn to the opposite of what he now swears to, he was speaking the truth when he first testified.' "

In U. S. v. Biener, 52 F. Supp. 54, Judge Bard declared:

"This rule of evidence has been criticized, and it seems to me very logically, by Circuit Judge Swan in United States ex rel. Ng Kee Wong v. Corsi, 2 Cir., 65 F. 2d 564, 565."

After referring to Professor Wigmore's statement, sec. 1018, supra, he said:

"I think this is much the sounder reasoning, but I think in a criminal case I am bound by the established decisions."

In State v. Jolly, 112 Mont. 352, 116 P. (2d) 686, referring to prior conflicting statements, the court said (page 355) :

"While the weight of authority would limit such evidence to the impeachment of the witness' subsequent testimony on the stand (2 Wigmore on Evidence, 2nd ed., 459, sec. 1018), the better reasoning would seem to support the other view (3 Wigmore on Evidence, 3rd ed., 687, sec. 1018), since the prior statement is not properly subject to objection as hearsay, the witness being present in court for cross-examination concerning it."

In Pulitzer v. Chapman et al., 337 Mo. 298, 85 S. W. (2d) 400, the court received in evidence as substantive proof of facts stated, prior inconsistent statements made in depositions in the same case by a witness who testified at the trial. It said (page 319) :

". . . since the former sworn statements of the witness in the same cause not only tend to discredit him, but have probative value and meet the hearsay rule as well, including the right of confrontation, we can see no reason why, *in the interest of justice and the elicitation of the truth,* the statements should not go to the jury for what they are actually worth, on the same principle that allows statements made by a witness on cross-examination contradicting his testimony on direct examination to be received as substantive proof of the facts stated. To say such former statements may be considered as impeaching testimony but not as substantive evidence is to make a distinction without a difference. As the Supreme Court of North Carolina observed in Medlin v. County Board of Education (167 N. C. 239) . . . a jury could not be expected to comprehend the distinction between the effect of a contradictory statement as impeaching evidence and as substantive evidence." (Italics supplied.)

It also referred to and approved section 1018 above from Wigmore and the decision of Judge Swan.

Our Supreme Court in Commonwealth v. Blanchard, 345 Pa. 289, made an exception to the orthodox rule in connection with a confession and treated it as substantive evidence against appellant. The court said (page 297) :

"Ordinarily, statements previously made by a witness can be used only to discredit the testimony inconsistent therewith given by him on the witness-stand, but, under the peculiar circumstances of the present case, it was necessary for the jury to determine for a wholly different purpose the truth or falsity of the facts asserted in the confessions. The latter were placed in evidence, not by the Commonwealth to impair the credibility of Lewis and Murray, but by appellant himself in order to prove that his own confession was false and had been obtained from him by violence; this he sought to establish by attempting to

show that the other confessions, made in regard to the same murder and asserting the same facts as the one made by him, were false and obtained by the same method. Certainly, he could not place these confessions in evidence with the claim that they were false without it being permitted to the Commonwealth to claim, on the contrary, that they were true because voluntarily made and substantially corresponding to his own."

If necessary, another exception will have to be made in this case in order to prevent a brazen forgery and a vicious fraud.

However, in our opinion, it will not be necessary because, apart from the rule, we believe that the declarations were properly admitted under other rules of evidence.

I. The declarations were properly received under the special exception established for declarations as to the fact of execution, revocation or content of documents.

In Reel v. Reel, 8 N. C. 248, it was claimed that the will had been secured by fraud from testator when drunk. Subsequent declarations by testator as to the contents of the will, showing them to be different from its actual contents, were admitted by Judge Henderson, who said (p. 268):

"To our minds, to reject the declarations of the only person having a vested interest and who was interested to declare the truth, whose fiat gave existence to the will, and whose fiat could destroy, and in doing the one or the other could interfere with the rights of no one, involves almost an absurdity. . . . The tribunal which is to try the fact . . . is . . . to decide whether the declarations contain the truth or are deceptive, in order to delude expectants and procure peace."

As the chancellor pointed out, the certificate of a justice of the peace of the acknowledgment of the deed is a judicial act: Commonwealth to use, etc., v. Haines,

97 Pa. 228. It is so important that it can only be impeached for fraud: Heilman v. Krob, 155 Pa. 1. The fraud may be proven by direct or circumstantial evidence or by a combination of both.

Referring to the declarations of attesting witnesses and to a statement of Gibson, J., in Crouse v. Miller, 10 S. & R. 158, concerning handwriting, Professor Wigmore said, vol. 5 (3rd ed.), sec. 1508, p. 329:

"Unquestioned as the reception of this hearsay statement has been, no judicial attempt seems to have been made to define the reasons for the trustworthiness thus accorded, by exception, to this class of hearsay statements."

He points out, however, four circumstances tending to their trustworthiness:

1. The occasion is a formal one, and the statement requires a writing; and there is commonly a radical disinclination to take part in a false transaction of such a sort.

2. The concoction of a false document will either fix an innocent party with a false obligation or will divest legitimate heirs of their rights, and there is a natural repugnance to giving assistance in such a wrong.

3. The making of a false attestation, whether or not it is in criminal law a forgery or a perjury, is popularly supposed to be such, and the attester would probably be at least an accomplice in a forgery; so that the subjective sanction deterring from a crime would probably operate to prevent a false attestation.

4. The attester knows that he is liable at any time to be called upon in court to substantiate his attestation; and not only is his falsity likely there to be exposed by the opponent's witnesses, but he will there be obliged either to commit perjury by swearing to the fact of execution or to undergo the disagreeable ordeal of recanting and confessing his falseness.

Here is a combination of circumstances which easily accounts for the establishment of this exception to the hearsay rule.

For the same reasons, a contradiction is permissible upon facts which tend to show the witness' corrupt testimonial intent for the case in hand: 3 Wigmore on Evidence (3rd ed.), sec. 1005, p. 662.

Who would be more interested in sustaining a deed which was a forgery than the man who wrote it and the man who took the acknowledgment? He, knowing that the document is forged, would be primarily concerned in seeking to avoid its cancellation. To whom would he be more apt to tell the truth than to the lawyer who had been engaged to sustain the deed? We appreciate that to allow the scrivener or the notary to impeach his acts is a dangerous proposition, that to permit him to come into court after a deed has been acted upon and to say that he did not take the acknowledgment is fraught with terrible consequences. Yet, on the other hand, when the evidence points clearly to the fact that there was no deed on the date of the death of the mother, we should speedily and unhesitatingly strike down the fraud. No court should, on technical grounds, permit one to be fraudulently deprived of his property by another.

II. Statements made out of court by a party opponent are universally deemed admissible when offered against him. Anything said by him may be used against him "as an admission" provided it exhibits the quality of inconsistency with the facts now asserted by him in pleadings or in testimony.

Statements of persons having the same or common interest as the party opponent are likewise received in evidence and properly so.

In considering extrajudicial admissions by persons having identity of interest, Professor Wigmore said, 4 Wigmore on Evidence (3rd ed.), sec. 1080a, p. 143:

". . . In the present subject, the general idea of receiving vicarious admissions, is that where the third person was, at the time of speaking, in *circumstances that gave him substantially the same interest* to know something about the matter in hand as had the now opponent, and the *same motive* to make a statement about it, that person's statements have approximately the same testimonial value as if the now opponent had made them." (Italics supplied.)

At page 118, sec. 1077, Wigmore says:

"Moreover, as a matter of probative value, the admissions of a person having virtually the same interests involved and the motive and means for obtaining knowledge will in general be likely to be equally worthy of consideration."

The statements of Harris were properly treated as assertions when we consider that while he had no pecuniary interest in the property, he did have the same interest as the grantee and the witnesses in sustaining the forgery as a genuine deed. To all intents and purposes he is an interested party.

In Fourth National Bank v. Albaugh, 188 U. S. 734, a bill in equity was brought to require defendant, receiver of the X bank, to apply funds in his hands to the payment to plaintiff of a debt due by one Cross and Martindale. The fund consisted of proceeds of sale of certain property of Cross. The bank was claiming under an assignment from Cross to Martindale as trustee, made in July 1898. Defendant claimed the funds under an earlier assignment to Martindale as trustee, dated March 1898. Cross was president of this bank and had been misusing its funds. The receiver contended that the assignment was made for the purpose of securing the bank. If that fact were established, there would be nothing left for plaintiff. Only Cross and Martindale were present when the assignment was delivered, and Cross killed himself the day

after he made a third assignment on November 15, 1898. Martindale was called as a witness for plaintiff, and on cross-examination testified to the delivery of the paper and by implication to the trust being in favor of the X bank, but he limited it to a sum of $7,500, which amount he testified that Cross said he wanted to use in a particular manner. Exceptions were taken to allowing the cross-examination to be extended to these facts. Subsequently other witnesses were allowed to testify that at different times out of court Martindale had stated that the assignment of March 4th was made to secure the X bank generally for Cross' liability to it. A decree for defendant was sustained.

Justice Holmes declared (page 736):

"The evidence of Martindale's declarations was put in not merely to contradict what he said on the stand, but as evidence largely relied on to prove the facts which he declared. . . .

*"If ever a declaration not made under oath is to be admitted against any other than the person making it, it should be admitted in this case. The declaration was obviously against interest. It was the only evidence in the nature of things that could be had. . . .* In these days, when the whole tendency of decisions and legislation is to enlarge the admissibility of hearsay where hearsay must be admitted or a failure of justice occur, we are not inclined to narrow the lines. The interest of Martindale continued, the appellants claim through it, and we are of the opinion that, under the circumstances, admissions by Martindale contrary to that interest properly were let in." (Italics supplied.)

31 C. J. S. 1138, §362 says:

"A community of interest and object between several persons acting together establishes a relation of agency which may render the admission of one of them competent against the others, although it was not made

in the presence of the party against whom it is sought to be used."

In Cameron v. Blanchard et ux., 107 Vt. 51, 176 Atl. 290, admissions by husband as to ownership of cows in wife's absence were held inadmissible in absence of evidence that particular property was jointly owned by defendants. "Without such a *joint ownership or a joint purpose or design*, the admissions of one party are not evidence against the other." (Italics supplied.)

In Overfield v. Pennroad Corporation et al., 42 F. Supp. 586, 628, evidence of official acts of defendants, corporate and intercorporate dealings, records and memoranda was held "admissible as to all of the defendants in view of the finding that there *was a combination between them* for the purposes described. 'It depends upon the principle that when any number of persons associate themselves together in the prosecution of a common plan or enterprise, lawful or unlawful, from the very act of association *there arises a kind of partnership*, each member being constituted the agent of all, so that the act or declaration of one, in furtherance of the common object, is the act of all, and is admissible as primary and original evidence against them.' Hitchman Coal & Coke Co. v. Mitchell, 1917, 245 U. S. 229, 38 S. Ct. 65, 72. (Italics supplied.)

III. These declarations are also admissible on the basis of a conspiracy. As Chamberlayne points out in his work on Evidence, vol. 2, p. 1685, whether the declarations of one conspirator will be received as an admission against his associates in the common enterprise is obviously a question to be determined by the substantive law of conspiracy as it is affected by the general principles of agency. It is not a question of evidence.

Professor Wigmore agrees. He says (vol. 4, sec. 1079, p. 130) :

"The question is purely one of criminal law, or of conspiracy as affecting joint civil liability, and its solution is not to be sought in any principle of Evidence."

In Gregory v. Sorenson, 214 Iowa 1374, 242 N. W. 91, the court admitted the testimony of a witness, Mrs. B, concerning conversations with a Mrs. C. She related statements and actions of Mrs. C to induce Mrs. B not to testify against defendant but to return home. The court said (page 1379) :

"There was evidence in the record supporting the fact that Mrs. Case and the appellant had entered into a conspiracy to illegally induce the witness Mrs. Beems not to testify against appellant in this case. These statements and actions of Mrs. Case occurred: First, during the furtherance of the unlawful plan; and, second, during the continuance thereof. Consequently, under all the circumstances, the evidence was properly admissible."

The court pointed out (page 1380) :

"Evidence of attempts to bribe witnesses is 'in the nature of an admission that the cause of the party resorting to bribery of witnesses ... is unjust, and that his claim is dishonest and unrighteous'."

In our case, the declarations of Harris in discussing the preparation for the trial with defendant's counsel, who was procured for her by Paul Baynock, one of the witnesses to the deed, were made during the course of a conspiracy to forge a deed and to sustain it and are indicative of the dishonest and unrighteous character of defendant's claim.

We must seek by ordinary experience of human nature to find the truth.

McDowell v. Rissell, 37 Pa. 164, was an action of trespass brought against the sheriff for selling property of A under execution against B, the property being in possession of B who claimed it as agent of A,

Declarations of B were held not admissible as evidence of fraud and collusion between him and A without some evidence of a common purpose or design between them. The court said (page 169):

"Frauds indeed could never be detected, unless most blunderingly perpetrated, 'if the rule of evidence were not so that when any concert is established, the declarations of either confederate become evidence against all his fellows'."

The court said (page 168):

"To make such declarations competent, there must be some evidence of a common purpose or design; but *a very slight degree of concert or collusion is sufficient* . . . (Italics supplied.)

"The court was right in treating the relations and conduct of McDowell and McKinney as some evidence of a collusive combination, not, perhaps, enough to convict either of them, but enough to furnish ground for admitting McKinney's declarations."

In Pier v. Duff, 63 Pa. 59, the court held that tenants in common have no community of title and interest which will make their declarations admissible against each other. But, Justice Sharswood said (page 64):

"There is no doubt that *if there be any, even very slight, evidence of complicity* between the grantor and grantee in a design to defraud creditors, the declarations of the one are admissible against the other, although made after the date of the grant." (Italics supplied.)

In Hartman v. Diller et al., 62 Pa. 37, it was alleged the court erred in permitting the declarations of Bartel made after the sale to Hartman and not in Hartman's presence to be given in evidence. Again Justice Sharswood said (page 43):

"As a general principle it is undoubtedly well established that the declarations of a grantor made after the execution of the grant cannot be made use of for

the purpose of impeaching it. But the rule has been so far modified that when the bona fides of the transfer is attacked by creditors alleging that it was intended to hinder, delay and defraud them, and therefore void under the statute of 13 Eliz. c. 5, and some evidence has been adduced tending to show a common purpose or design of this character by the parties, then such declarations are admissible. For wherever evidence is given tending to prove a combination or conspiracy to do an unlawful act, it lets in the declarations of all the parties against each other."

31 C. J. S. 1139, §362: A mere allegation of the existence of a conspiracy and common design is not sufficient to render an admission competent against parties other than declarant; it must appear that at the time the statement was made there existed between the parties affected by the declaration some common undertaking or agreement, express or implied, to carry out the common purpose in a definite way by united efforts. *This may be proved by* either direct or *circumstantial evidence.* (Italics supplied.)

While evidence of conspiracy must ordinarily be furnished before offering the statements, in a given case the trial court's discretion may relax this rule: 4 Wigmore, sec. 1079, p. 131.

IV. Rules governing admission and consideration of acts and declarations of co-conspirators in criminal cases apply also in civil actions: Farmers and Traders Bank v. Davis, 39 Ga. App. 74, 146 S. E. 793; Yorkshire Insurance Co. v. Bryan, 248 Ky. 847, 60 S. W. (2d) 120.

The admissions of one joint tortfeasor are receivable against another, on the same principle and with the same limitations as those of conspirators; this is merely the same doctrine in its application to civil liability for torts: 4 Wigmore on Evidence (3rd ed.), sec. 1079, p. 134.

V. Finally, as the chancellor pointed out in his adjudication, the court should receive the best available evidence in order to prevent perpetration of a fraud; it should not stand upon technicalities. Here we can aptly apply the language of Justice Holmes in Fourth National Bank v. Albaugh, supra:

"If ever a declaration not made under oath is to be admitted against any other than the person making it, it should be admitted in this case. The declaration was obviously against interest. It was the only evidence in the nature of things that could be had."

We hold that under any of these rules and principles the declarations of Harris were properly admitted.

Considering objection (b), namely, that plaintiffs were bound by the testimony of Harris because it is uncontradicted, we need only say that it was fully contradicted by the testimony of Enoch Thomas, Esq. We approve what the chancellor said as to the reputation and character of this young lawyer. He had been engaged by Baynock on behalf of defendant to sustain this deed. Harris and Baynock were fellow employes in the court house and knew each other well. It was to the interest of all those involved that the deed be sustained. It was but natural that Harris would tell the truth to the lawyer who had undertaken the burden of sustaining it.

We are satisfied that the deed recorded was not executed by Mary Levitski, that it is a forgery, and that it was executed by Harris about two weeks after her death.

Therefore, we approve the findings of fact and the conclusions of law of the chancellor, and we enter the following

### Final Decree

Now, February 28, 1950, it is ordered, adjudged and decreed:

1. That the deed dated February 14, 1948, recorded in Deed Book 979, page 290, purporting to be executed and acknowledged by Mary Levitski, is invalid, null and void.

2. The Recorder of Deeds of Luzerne County is directed to enter on the margin of the record of this deed a copy of this decree.

3. That Mary Shuscavage, defendant, shall not alienate or encumber the property.

4. Mary Shuscavage, defendant, shall deliver up the deed for cancellation.

5. That Mary Shuscavage, defendant, pay the costs.